508 So.2d 380 (1987)
Glen McCURDY, Appellant,
v.
J.C. COLLIS and Exxon Corporation, Appellees.
No. BM-258.
District Court of Appeal of Florida, First District.
March 16, 1987.
On Motion for Rehearing June 11, 1987.
*381 Charles J. Kahn, Jr., of Levin, Warfield, Middlebrooks, Mabie, Thomas, Mayes & Mitchell, Pensacola, for appellant.
A. Broaddus Livingston and Sylvia H. Walbolt, of Carlton, Fields, Ward, Emmanuel, Smith & Cutler, P.A., Tampa, for appellees.
JOANOS, Judge.
Appellant Glen McCurdy appeals from an order granting summary judgment in favor of appellees J.C. Collis and Exxon Corporation (Exxon), with respect to McCurdy's claim of tortious interference with a business relationship. We reverse.
The starting point for this appeal was McCurdy's successful prosecution of a personal injury action against Exxon in Alabama state court. In 1980, McCurdy was working as a foreman for Welding Unlimited. Welding Unlimited performs 98 to 99 percent of its work for Exxon. On September 12, 1980, McCurdy was severely burned by molten sulphur at the Exxon sulphur recovery plant in Flomaton, Alabama.
After a 17 to 18 month period of recuperation, McCurdy returned to his former job. According to his employers at Welding Unlimited, McCurdy continued to be a good foreman.
At the Alabama trial, McCurdy's treating physician, Dr. Johnson, testified that due to the extent of his (McCurdy's) burns, he should not work in a hot, dirty environment. The physician further stated that McCurdy had suffered no loss of physical strength other than that attributable to the long period of inactivity required for McCurdy to recover from his injuries. On March 15, 1982, Dr. Johnson signed a work release for McCurdy's return to work.
Exxon put on evidence and argued to the jury that McCurdy could work, and in fact had returned to work for Welding Unlimited. McCurdy's trial stance was that although he was working, he was not working at top performance, and any prediction about how long he would be able to continue to work was speculative. The jury found for McCurdy, and awarded damages of $750,000, which Exxon paid on June 14, 1982, without taking an appeal.
On July 20, 1982, Wayne Harms, a district engineer for Exxon, contacted Gary Brock, one of the owners of Welding Unlimited. Harms had heard reports about Dr. Johnson's trial testimony, and told McCurdy's employer (Brock) that in Exxon's opinion, McCurdy was a safety risk. Subsequently, Harms and J.C. Collis of Exxon met with Brock and Huss, the owners of Welding Unlimited, McCurdy's employers. Exxon representatives reiterated the view that McCurdy was a safety risk, and reminded Huss and Brock that their contract required that they perform their *382 duties for Exxon in a safe manner. Huss and Brock were then advised that McCurdy could not work on Exxon property, because that work area was the type of environment which McCurdy's doctor had said he (McCurdy) should avoid.
After the meeting with Exxon's representatives, McCurdy's employers did not permit him to return to any jobs for Exxon. Instead, McCurdy was assigned the role of errand-runner. Shortly, thereafter, McCurdy took a leave of absence. When he attempted to return to work, he was told Welding Unlimited had no job for him until he could work at Exxon. McCurdy was unsuccessful in his efforts to obtain employment with other contractors in the area, who also performed the major portion of their work for Exxon.
McCurdy filed suit against Exxon, seeking damages for slander and tortious interference with a business relationship. The trial court entered summary judgment in favor of Exxon. McCurdy appeals only the portion of the summary judgment which pertains to the tortious interference count.
We note at the outset that summary judgment is appropriate only in those instances where it is shown "that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fla.R.Civ.P. 1.510(c). Exxon argues here as it did before the trial court that the statements made by Exxon personnel to McCurdy's employers were qualifiedly privileged. While we agree that in certain circumstances Exxon would be entitled to interfere to a limited extent with Welding Unlimited's choice of employees, the record in this case suggests the privilege was not properly exercised.
The Florida Supreme Court first enunciated the concept of qualified privilege in Coogler v. Rhodes, 38 Fla. 240, 248, 21 So. 109, 112 (1897), saying:
Where a person is so situated that it becomes right, in the interests of society, that he should tell to a third person certain facts, then, if he bona fide, and without malice, does tell them, it is a privileged communication.
In other words, a statement "made by one who has a duty or interest in the subject matter to one who has a corresponding duty or interest" is qualifiedly privileged. Schreidell, Finnegan, and Brite Electric Division v. Shoter, 500 So.2d 228 (Fla. 3rd DCA 1986). See also Teare v. Local Union No. 295, of the United Association of Journeymen & Apprentices of the Plumbers & Pipe Fitters Industry, 98 So.2d 79 (Fla. 1957); Water & Sewer Utility Construction, Inc. v. Mandarin Utilities, Inc., 440 So.2d 428 (Fla. 1st DCA 1983).
In those instances where there is a qualified privilege to make statements potentially damaging to another, a plaintiff must prove express malice or malice in fact in order to recover. See Schreidell, Finnegan and Brite Electric Division v. Shoter, and cases cited therein. Proof of malice in fact involves production of evidence from which the jury could conclude that the challenged statement was motivated by ill will and the desire to harm. Schreidell v. Shoter, 500 So.2d at 231; Lewis v. Evans, 406 So.2d 489 (Fla. 2d DCA 1981). Such proof may be established indirectly, i.e., "by proving a series of acts which, in their context or in light of the totality of surrounding circumstances, are inconsistent with the premise of a reasonable man pursuing a lawful objective, but rather indicate a plan or course of conduct motivated by spite, ill-will, or other bad motive." Southern Bell Telephone & Telegraph Company v. Roper, 482 So.2d 538, 539 (Fla. 3d DCA 1986); 29 Am.Jur.2d Evidence, s. 361. Where the circumstances surrounding the statement are in dispute, the question of qualified privilege is a factual determination for resolution by the jury. See Hartley & Parker, Inc. v. Copeland, 51 So.2d 789 (Fla. 1951); Schreidell v. Shoter, 500 So.2d at 231; Southern Bell v. Roper, 482 So.2d at 539; Glickman v. Potamkin, 454 So.2d 612 (Fla. 3d DCA 1984), review denied, 461 So.2d 115 (Fla. 1985).
One seeking to recover on a claim predicated on tortious interference with a business relationship must establish:

*383 (1) the existence of a business relationship, not necessarily evidenced by an enforceable contract;
(2) knowledge of the relationship on the part of the defendant;
(3) an intentional and unjustified interference with the relationship by the defendant; and
(4) damage to the plaintiff as a result of the breach of the relationship.[1]
Tamiami Trail Tours, Inc. v. Cotton, 463 So.2d 1126, 1127 (Fla. 1985); Water & Sewer Utility Construction, Inc. v. Mandarin Utilities, Inc., 440 So.2d 428, 430 (Fla. 1st DCA 1983); Peacock v. General Motors Acceptance Corporation, 432 So.2d 142, 145, f.n.3 (Fla. 1st DCA 1983); Ethyl Corporation v. Balter, 386 So.2d 1220, 1223 (Fla. 3d DCA 1980), cert. denied, 452 U.S. 955, 101 S.Ct. 3099, 69 L.Ed.2d 965 (1981).
In Tamiami Trail Tours, the supreme court approved that portion of this court's decision reported at 432 So.2d 148 (Fla. 1st DCA 1983), which held that the third element (intentional and unjustified interference with a business relationship) does not require a showing that the interference was intended to secure a business advantage over the plaintiff. The supreme court concluded there is "no logical reason why one who damages another in his business relationships should escape liability because his motive is malice rather than greed. The action is tortious, regardless of motive." 463 So.2d at 1128. It is clear, however, that "the interference must be both direct and intentional." (emphasis supplied). Lawler v. Eugene Wuesthoff Memorial Hospital Association, 497 So.2d 1261, 1263 (Fla. 5th DCA 1986); Rosa v. Florida Coast Bank, 484 So.2d 57 (Fla. 4th DCA 1986).
As the supreme court made clear in Tamiami Trail Tours, the relationship at issue need not be evidenced by an enforceable contract. Thus, an action will lie where, as in the instant case, a party tortiously interferes with a contract terminable at will. Chipley v. Atkinson, 23 Fla. 206, 1 So. 934 (1897); Mays v. Stratton, 183 So.2d 43 (Fla. 1st DCA), cert. denied, 188 So.2d 817 (Fla. 1966); Florida Power & Light Company v. Fleitas, 488 So.2d 148, 152 (Fla. 3d DCA 1986); Unistar Corporation v. Child, 415 So.2d 733, 734 (Fla. 3d DCA 1982); Insurance Field Services, Inc. v. White & White Inspection and Audit Services, Inc., 384 So.2d 303, 306 (Fla. 5th DCA 1980).
A qualified privilege to interfere is not negated by concomitant evidence of malice. It is only when malice is the sole basis for interference that it will be actionable. Ethyl Corp. v. Balter, 386 So.2d at 1225-1226. Nor is there a cause of action for negligent interference; to be actionable, the conduct must be intentional.[2]Florida Power & Light Co. v. Fleitas, 488 *384 So.2d at 151. Similarly, there is no cause of action for tortious interference when a contract provision expressly reserved the right to interfere. Florida Telephone Corporation v. Essig, 468 So.2d 543, 544 (Fla. 5th DCA 1985).
In those circumstances in which there is a qualified privilege to interfere with a business relationship, the privilege carries with it the obligation to employ means that are not improper. Peacock v. GMAC, 432 So.2d at 144-145; Babson Bros. Co. v. Allison, 337 So.2d 848, 850 (Fla. 1st DCA 1976), cert. denied, 348 So.2d 944 (Fla. 1977). In other words, the privilege does not encompass the purposeful causing of a breach of contract. Yoder v. Shell Oil Company, 405 So.2d 743, 744 (Fla. 2d DCA 1981); Restatement (2d) of Torts, s. 777 (1977). The justification for intentional interference "depends upon a balancing of the importance, social and private, of the objective advanced by the interference against the importance of the interest interfered with, considering all circumstances among which the methods and means used and the relation of the parties are important." Insurance Field Services v. White, 384 So.2d at 306-307.
In this case, the respective parties have, in a sense, adopted positions directly contrary to the position which each advanced in the Alabama trial. In so doing, both parties rely on the doctrine of estoppel against inconsistent positions. The doctrine provides that a party who assumed a certain position in a legal proceeding may not thereafter assume a contrary position, especially if it is prejudicial to the party who acquiesced in the former position. Palm Beach County v. Palm Beach Estates, 110 Fla. 77, 148 So. 544, 548-49 (1933); Lambert v. Nationwide Mutual Fire Insurance Company, 456 So.2d 517, 518 (Fla. 1st DCA 1984); Pearson v. Harris, 449 So.2d 339, 343 (Fla. 1st DCA 1984); Sobel v. Jefferson Stores, Inc., 459 So.2d 433 (Fla. 3rd DCA 1984). For example, in Scott v. Sears, Vail & Williams, P.A., 366 So.2d 786 (Fla. 1st DCA 1978), this court held it is inconsistent for a party to contend that a court or jury could properly measure his damages when he incorporated into his complaint his agreement with the other parties that damages could not be measured.
In this case, Exxon had an interest, albeit not an investment interest, in the job performance of Welding Unlimited, appellant's employer. In addition, Exxon had a contractual right to raise safety concerns regarding the manner in which Welding Unlimited performed its duties for Exxon. In this instance, however, malice is implicit in the manner in which Exxon allegedly exercised its right to voice safety concerns to its subcontractor. First, Exxon, through its personnel, stated it made its decision to ban appellant from its plant solely on the basis of Dr. Johnson's trial testimony. Exxon personnel acknowledged that none of the decision makers had observed appellant at work, there had been no communication of any kind regarding the manner in which appellant performed his duties, and when Exxon personnel met with appellant's employers  the employers advised that appellant was doing a good job and there had been no complaint concerning his work. The inference of malice as the motivating factor in Exxon's decision arises due to the timing of the decision, i.e., five weeks after Exxon paid the judgment award, and due to the basis of the decision, including the fact that no well-founded accusation had been made, and no investigation had been conducted by Exxon before announcing its decision.
This record reflects that McCurdy has established (1) the existence of a business relationship, (2) Exxon's knowledge of that relationship, (3) Exxon's intentional interference with the relationship, and (4) damage as a result of Exxon's interference. Exxon has argued strenuously that its interference was justifiable on the basis of its contractual right to raise questions concerning safety in its plants. Nevertheless, the record indicates that Exxon personnel based their decision that McCurdy was a safety risk on the basis of third party reports concerning Dr. Johnson's trial testimony. Exxon conducted no independent investigation of McCurdy's job performance, and in fact his employers advised Exxon that McCurdy was doing a good job.
*385 Since we recognize the difficulties involved in determining whether malice was the sole motivating factor in this interference case, we conclude the qualified privilege issue should be resolved by the trier of fact. Accordingly, the summary judgment is reversed and this case is remanded for proceedings consistent with this opinion.
MILLS and SHIVERS, JJ., concur.

ON MOTION FOR REHEARING
JOANOS, Judge.
Appellee Exxon Corporation has filed motion for rehearing of the opinion released March 16, 1987. Upon consideration of appellee's motion for rehearing, we have determined that the opinion's treatment of the doctrine of estoppel against inconsistent positions should be clarified. The opinion included a general discussion of the doctrine of estoppel against inconsistent positions, but failed to address the inapplicability of the doctrine to the instant case. Since the Alabama jury award was a general verdict, it cannot be determined whether any part of the award was intended as compensation for future lost wages. Accordingly, we find the doctrine of estoppel against inconsistent positions is inapplicable to this case.
In all other respects, the motion for rehearing is denied.
MILLS and SHIVERS, JJ., concur.
NOTES
[1] The factors to consider in evaluating the propriety of interference with contractual relations are stated in Restatement (Second) of Torts s.767 (1977), as:

In determining whether an actor's conduct in intentionally interfering with a contract or a prospective contractual relation of another is improper or not, consideration is given to the following factors:
(a) the nature of the actor's conduct,
(b) the actor's motive,
(c) the interests of the other with which the actor's conduct interferes,
(d) the interests sought to be advanced by the actor,
(e) the social interests in protecting the freedom of action of the actor and the contractual interests of the other,
(f) the proximity or remoteness of the actor's conduct to the interference and
(g) the relations between the parties.
[2] For example, Florida Standard Jury Instruction (Civil) MI 7.2, states in relevant part:

A person who interferes with the business relations of another with the motive and purpose, at least in part, to advance [or protect] his own business [or financial] interests, does not interfere with an improper motive. But one who interferes only out of spite, or to do injury to others, or for other bad motive, has no justification, and his interference is improper.
.....
If (defendant's) interference was improper, the last question is whether it was intentional as well. Interference is intentional if the person interfering knows of the business relationship with which he is interfering, knows he is interfering with that relationship, and desires to interfere or knows that the interference is substantially certain to occur as a result of his action.