623 So.2d 515 (1993)
Pauline WEISFELD, Appellant,
v.
PETERSEIL SCHOOL CORP., d/b/a The Heritage School, and Joseph Peterseil, Appellees.
No. 91-2821.
District Court of Appeal of Florida, Third District.
May 11, 1993.
Order Clarifying Opinion June 22, 1993.
Baldwin & Friedman, P.A., and Kenneth A. Friedman, North Miami Beach, for appellant.
Valdes-Fauli, Cobb, Bischoff & Kriss, P.A., and Robert S. Turk, Leslie W. Langbein, and Jeremy J. Hart, for appellees.
Before BASKIN, COPE and GERSTEN, JJ.
COPE, Judge.
Pauline Weisfeld appeals an adverse final judgment after bench trial. We reverse.
During the summer of 1988, Weisfeld signed an employment contract to teach art at the Heritage School for the 1988-89 school year.[1] The Heritage School was operated by appellee Peterseil School Corp., and was administered by Joseph Peterseil, headmaster.
The employment contract had a liquidated damages clause. It provided that if a teacher left the School's employ without the School's consent, then the teacher would owe the School two months' wages as liquidated damages. The employment contract also *516 provided that Heritage could notify other schools of the existence of the employment agreement, and could require other schools to deactivate any pending employment applications that the teacher might have with such schools.
Weisfeld reported to work on August 29, 1988, as required by the contract. In mid-September, the Dade County Public School System contacted Weisfeld about a teaching vacancy. On September 19, Dade County offered, and Weisfeld accepted, a teaching position effective September 26.
On September 19 Weisfeld met with the headmaster. She informed the headmaster that she had accepted a teaching position with Dade County. She told him that Friday, September 23, would be her last day of work.[2] She asked Heritage's consent to relieve her of her contractual obligations and offered to assist in finding a replacement. The headmaster refused consent and refused to accept her resignation.
The same day, the headmaster contacted Dr. Garner of the Dade County School System. Dade County had an announced policy that it would not offer a job to a teacher who was under contract to another school. The headmaster complained that a job had been offered to Weisfeld in violation of the announced policy.
On Tuesday morning, Dr. Garner conducted a conference telephone call with the headmaster and Weisfeld. The headmaster reiterated that Weisfeld was under contract to Heritage. He stated that the School did not have someone to replace her and would not consent to her departure. Dr. Garner then told Weisfeld and the headmaster that Dade County's job offer to Weisfeld was withdrawn.
That afternoon, the headmaster interviewed and hired a replacement art teacher, to begin work the following Monday, September 26. He did not advise Weisfeld or Dade County of this.
Meanwhile, Weisfeld remained on the job. She made several attempts to meet with the headmaster. She had heard rumors that she was to be replaced and fired. She wished to verify whether or not she would have a job at Heritage. The headmaster refused to see her.
On Friday afternoon, September 23, the School delivered a letter firing her. It stated:
Please be advised that the undersigned represents The Heritage School, with whom you are employed pursuant to a Faculty Employment Contract dated June 1, 1988. Dr. Joseph Peterseil has advised me that on Monday, September 19, 1988, you tendered your resignation in order to seek employment with the Dade County School System, which resignation was not accepted. We consider your resignation to be a breach of your employment contract.
Please be advised that effective 3:00 P.M. today, you are no longer employed by The Heritage School. Be further advised that we intend to pursue remedies provided by Paragraph 5 of your contract [the liquidated damages clause].
In the meantime, Dade County had filled the position it had offered Weisfeld. Upon learning that Weisfeld had been discharged, Dade County hired Weisfeld as a substitute teacher and eventually placed her in a permanent teaching position.
The School brought suit for liquidated damages for breach of contract. Weisfeld counterclaimed for breach of contract and intentional interference with a contractual relationship. After a bench trial, the court ruled in the School's favor. Weisfeld has appealed.
By policy Dade County would not offer a position to a teacher already under contract to a private school, unless the private school gave its consent. The obvious purpose was to assist private schools in keeping their teachers on the job for the balance of the contract year, unless in a particular case a school was in a position to let a teacher leave.
Here, the headmaster contacted Dade County and complained that the County had *517 offered a job to Weisfeld, who was under contract to Heritage. Dr. Garner asked the headmaster point blank if he would release Weisfeld to Dade County, and the headmaster refused to do so. Dade County then withdrew its job offer to Weisfeld.
Up to this point, the headmaster had acted to protect Heritage's contractual rights, or at least the trier of fact could so find. However, the headmaster had caused Dade County to withdraw its job offer, so that the Heritage School could hold Weisfeld to her teaching contract. Having gone this far, Heritage was obliged to allow Weisfeld to perform her contract.[3] At this point the School was estopped from changing its position.
Within a matter of hours after the conference call with Dr. Garner, the headmaster interviewed and hired a new art teacher. From that moment on, it was obvious that the headmaster was going to fire Weisfeld. Weisfeld attempted to see the headmaster all week, but he refused. On Friday of that same week Heritage fired Weisfeld.
We conclude that once Heritage caused Dade County to withdraw its offer, Heritage had to allow Weisfeld an opportunity to perform her contract. By firing her, Heritage breached the contract. The judgment against Weisfeld for breach of contract must be reversed and remanded with directions to enter judgment in favor of Weisfeld on her breach of contract counterclaim, and for computation of damages accordingly.[4]
Weisfeld also counterclaimed against the School for intentional interference with a contractual relationship. See Tamiami Trail Tours, Inc. v. Cotton, 463 So.2d 1126 (Fla. 1985). The question here hinges on the headmaster's intent at the time he refused to give Dr. Garner consent to Weisfeld's accepting a Dade County job. The headmaster had a qualified privilege to protect Heritage's contract rights with Weisfeld.[5]
The headmaster testified that he acted in good faith when he refused consent for Weisfeld to leave. He stated that at that time he wanted Weisfeld to stay on the job. He testified that the machinery to find a replacement was already in motion and it was fortuitous that the Tuesday afternoon interviewee turned out to be well qualified. He testified that at that point  which was after the conference call  he decided to replace Weisfeld.
Weisfeld argues that under the circumstances, the headmaster must have intended to fire her all along. Weisfeld contends that the headmaster acted out of spite in causing Dade County to withdraw the offer. She urges that the headmaster's prompt hiring of a replacement, coupled with a refusal to advise her or Dade County that he had done so, points inescapably to bad faith and tortious conduct.
The trial court found in favor of the headmaster and School on this factual issue. Although the evidence is disputed, there is a factual basis on which the trial court could find that, at the time the headmaster contacted Dade County, his actions were taken in order to protect the School's own contractual rights, and were thus privileged. See Ethyl Corp. v. Balter, 386 So.2d 1220, 1225 (Fla. 3d DCA 1980), review denied, 392 So.2d 1371 (Fla.), cert. denied, 452 U.S. 955, 101 S.Ct. 3099, 69 L.Ed.2d 965 (1981); see also McCurdy v. Collis, 508 So.2d 380, 383-84 (Fla. 1st DCA), review denied, 518 So.2d 1274 (Fla. 1987). On the intentional interference counterclaim the judgment is affirmed. A breach of contract was committed, but not a tort.
Affirmed in part, reversed in part, and remanded.
BASKIN, J., concurs.
*518 GERSTEN, Judge.
I concur in part and respectfully dissent in part.
Appellant, Pauline Weisfeld (Weisfeld), had an employment contract with appellee, Peterseil School Corp. (the School). The contract contained a "covenant not to seek other employment," which provided that if Weisfeld terminated her employment with the School prior to the term expiring, the School would be entitled to liquidated damages. The contract also allowed the School to notify other schools of the existence of the contract.
After signing the employment contract with the School, Weisfeld interviewed with the Dade County Public Schools, and received and accepted a teaching offer. The evidence was in dispute regarding whether Weisfeld informed Dade County Public Schools that she was under contract with the School. On the afternoon of September 19, 1988, Weisfeld met with Dr. Peterseil, the president of the School, and informed him that she had accepted an offer elsewhere. Weisfeld requested that Dr. Peterseil release her from her contract with the School. Dr. Peterseil attempted to persuade Weisfeld to retract her resignation, but she refused.
The next morning, a three-way telephone conversation took place between Weisfeld, Dr. Peterseil and Dr. Garner, of the Dade County School Board. Dr. Garner asked Weisfeld whether she was presently under contract with the School. Weisfeld responded that she was under contract. Dr. Garner informed her that the Dade County School Board had a policy of not hiring teachers who were under contract.
Dr. Garner then asked Dr. Peterseil whether he released Weisfeld from the contract. Dr. Peterseil responded that he was not releasing Weisfeld from the contract. At that point, Dr. Garner informed Weisfeld that the Dade County School Board's offer was withdrawn. Weisfeld did not retract her resignation before or after the withdrawal of the Dade County School Board offer. Subsequently, the School advised Weisfeld that she was no longer employed due to her breach of contract.
The School sued Weisfeld for breach of contract. Weisfeld counterclaimed for breach of contract and tortious interference with a contract.
At a non-jury trial, Dr. Peterseil testified that he did not release Weisfeld because he would have difficulty finding a replacement midstream in the school term, and because he did not want to waive the School's rights under the contract. After trial, the court entered judgment in favor of the School on the main claim and the counterclaim.
Clearly, Weisfeld materially breached her contract with the School by accepting the employment offer and tendering her resignation. The majority's conclusion that the School caused Dade County to withdraw its offer is not supported by the facts or the law.
On appeal, all the testimony and proper inferences from the testimony must be viewed in the light most favorable to the appellee, as the verdict winner in the trial court. Oliver v. Eisenman, 523 So.2d 189 (Fla. 1st DCA 1988); Yaeger v. Tolin, 277 So.2d 61 (Fla. 3d DCA 1973); Graves v. Wiggins, 257 So.2d 268 (Fla. 3d DCA 1972); Krasny v. Richter, 211 So.2d 612 (Fla. 3d DCA 1968). The majority fails to adhere to this rule.
The record reflects Dr. Peterseil attempted to persuade Weisfeld to stay at the School, but she refused. The trial court inferred from the totality of the evidence that Dr. Peterseil was merely insisting on his rights under the contract when he contacted Dade County.
However, the majority states, "[T]he headmaster had caused Dade County to withdraw its job offer, so that the Heritage School could hold Weisfeld to her teaching contract." Although this is one inference that can be drawn from the evidence, in light of the verdict, this was not the inference drawn by the trial court which was the finder of fact below.
The actions taken by the School in response to Weisfeld's resignation were proper, *519 and did not amount to a breach of contract. Weisfeld repudiated[1] the employment contract when she tendered her resignation on September 19, 1988. The school was not required to seek adequate assurance[2] of Weisfeld's continued performance since she had manifested and conveyed no doubts as to her resignation.
In fact, though Weisfeld had the rest of the day on September 20, 1988, to retract her resignation and nullify her breach,[3] she continued pursuing the position with Dade County Public Schools. Weisfeld testified that after the September 20, 1988 three-party conversation, she called Dr. Garner to tell him she believed she would be fired and that someone had interviewed for her position. She was to keep him informed.
The majority focuses on the School not releasing Weisfeld from the contract. Yet, the School merely asserted its legal contractual rights. If the School released Weisfeld, then it may have waived its contractual rights to liquidated damages. See Gustafson v. Jensen, 515 So.2d 1298 (Fla. 3d DCA 1987).
The majority concludes that the School was estopped from changing its position. It was obliged to allow Weisfeld to perform her contract. However, this is a misapplication of the doctrine of estoppel.
Estoppel is applied with great caution. "[I]f conduct is ambiguous and thus susceptible of two constructions, one of which is inconsistent with the right asserted by the party sought to be estopped, there is no estoppel." Capital Bank v. Schuler, 421 So.2d 633 (Fla. 3d DCA 1982). Here, the School's conduct is ambiguous. Thus, estoppel is inappropriate.
Furthermore, critical to estoppel is detrimental reliance on the adverse party's misrepresentation. Lyng v. Payne, 476 U.S. 926, 106 S.Ct. 2333, 90 L.Ed.2d 921, rehearing denied, 478 U.S. 1031, 107 S.Ct. 11, 92 L.Ed.2d 766 (1986). There is neither a showing of Weisfeld's being misled nor of detrimental reliance on her part. She thought she would be fired but she never changed her position.
I concur with the majority's affirmation of the counterclaim. There is no cause of action for tortious interference when a contract provision expressly reserves the right to interfere. McCurdy v. Collis, 508 So.2d 380 (Fla. 1st DCA), review denied, 518 So.2d 1274 (Fla. 1987); Florida Telephone Corporation v. Essig, 468 So.2d 543 (Fla. 5th DCA 1985). In this case, the employment contract expressly allowed the School to inform other schools that Weisfeld was under contract.
Accordingly, I would affirm the entire judgment on review.

ORDER ON MOTION FOR CLARIFICATION
Appellees' motion for clarification is granted, as follows:
1. This court has by separate order dated June 8, 1993, granted Weisfeld appellate attorney's fees pursuant to section 448.08, Florida Statutes, and has remanded to the trial court to determine the amount. Footnote 4 does not cover appellate attorney's fees.
2. The opinion dated May 11, 1993, is modified by deleting footnote 4. In its place a new footnote 4 is substituted as follows:
*520 BASKIN, COPE and GERSTEN, JJ., concur.
NOTES
[1] Weisfeld had taught at Heritage for the preceding four years.
[2] Weisfeld testified that she was, through no fault of her own, in financial straits and needed the additional income available through Dade County's higher pay scale.
[3] Plainly Weisfeld would not be leaving Heritage for a Dade County job, since the Dade County job had been withdrawn. The School could have, however, demanded an unequivocal assurance from Weisfeld that she would continue to perform the contract, failing which the School could discharge her. See Restatement (Second) of Contracts § 251. The School sought no such assurances, and instead hired a new teacher while refusing to meet with Weisfeld. Weisfeld continued to perform her duties until fired.
[4] The judgment against Weisfeld for attorney's fees for trial is reversed. On remand the court shall conduct such proceedings as are appropriate on Weisfeld's application for attorney's fees for trial under section 448.08, Florida Statutes (1987).
[5] Heritage also had comparable rights under the terms of its contract with Weisfeld.
[1] Restatement (Second) of Contracts § 250(a) defines a repudiation as "a statement by the obligor to the obligee indicating that the obligor will commit a breach that would of itself give the obligee a claim for damages for total breach...."
[2] Restatement (Second) of Contracts § 251(1) provides that "Where reasonable grounds arise to believe that the obligor will commit a breach by nonperformance ... the obligee may demand adequate assurance of due performance ..."
[3] Restatement (Second) of Contracts § 256(1) provides that the effect of a statement as constituting a repudiation under § 250 or the basis under § 251 "is nullified by a retraction of the statement if notification of the retraction comes to the attention of the injured party before he materially changes his position in reliance on the repudiation... ." The school hired a replacement on the afternoon of September 20, 1988; thus, the School materially changed its position.