745 So.2d 460 (1999)
ISS CLEANING SERVICES GROUP, INC. and James Warner, Appellants/Cross-Appellees,
v.
Richard A. COSBY, Appellee/Cross-Appellant.
No. 98-0617.
District Court of Appeal of Florida, Fourth District.
November 17, 1999.
David E. Block of Jackson, Lewis, Schnitzler & Krupman, Miami, and Marcus L. Snow, Jr., of Jackson, Lewis, Schnitzler & Krupman, Orlando, for appellants/cross-appellees.
Mark F. Booth of Rogers, Morris & Ziegler, Fort Lauderdale, for appellee/cross-appellant.
STEVENSON, J.
Appellants, ISS Cleaning Services Group, Inc. ("ISS") and James Warner, an ISS employee, challenge the jury's verdict awarding Richard Cosby $5,604.44 for breach of contract, $92,500 compensatory damages for tortious interference with business relations, $500,000 punitive damages against ISS, and $10,000 punitive *461 damages against Warner. Appellants claim error on numerous grounds, including that the trial court erred in denying their motions for summary judgment, for a directed verdict, and for a new trial on Cosby's claims. In addition, appellants claim that the trial court erred in denying their motion for remittitur and that the punitive damages award, which exceeded three times the compensatory damages award, must be vacated as a matter of law. Cosby cross-appeals and argues that the trial court erred in denying his motion for attorney's fees. We reverse because the trial court erred in denying appellants' motion for a directed verdict on Cosby's claim for tortious interference with business relations.

I. Background
National Cleaning Contractors, Inc., a janitorial and cleaning services company, employed Cosby as Vice President of Sales and Marketing, and later as Vice President and General Manager. Cosby and NCC executed a Bonus Agreement with Post-Employment Covenants which forbade Cosby from soliciting or accepting business from NCC customers, attempting to induce NCC employees to leave NCC, and interfering with NCC's business relationships for one year after Cosby's employment with NCC ceased. NCC was eventually acquired by ISS Cleaning Services Group, Inc. ISS reassigned most of Cosby's duties and responsibilities, and decreased his $60,000 salary by approximately $18,000. Cosby was given a sales position and offered a commission plan to supplement his salary.
Subsequently, Cosby was terminated because ISS felt that Cosby's transition from operations to sales "was not working out." ISS paid Cosby two weeks salary in lieu of two weeks notice of termination. Shortly thereafter, Cosby interviewed for a job with Controlled Services. Cosby was not offered the position, but he eventually commenced employment with Sunshine Cleaning Services, Inc., one of ISS's competitors. While working with Sunshine during 1994, Cosby earned approximately $38,142, inclusive of a car allowance. In 1995, Cosby earned a base salary of $40,000.
ISS eventually filed suit against Cosby for breach of contract on the grounds that he solicited ISS customers on behalf of Sunshine, revealed ISS's customer lists to Sunshine, removed and failed to return documents constituting trade secrets and confidential information belonging to ISS, and attempted to induce ISS employees to leave ISS. The complaint also alleged that Cosby tortiously interfered with ISS's business relationships with ISS customers, misappropriated ISS's confidential trade secrets by utilizing information regarding ISS's bidding rates in order to prepare bids for Sunshine, and that Cosby gave ISS customer lists to Sunshine. Cosby counter-claimed against ISS for age discrimination; tortious interference with prospective business relations because Warner called Sunshine and Controlled Servicesboth companies from which Cosby sought employment after his termination from ISSregarding the non-compete provisions in the Bonus Agreement; and breach of contract for failing to pay the bonus owed Cosby pursuant to the Bonus Agreement at the time of his termination.
The jury rejected each of ISS's claims against Cosby, ruled against Cosby on his age discrimination claim, but ruled on behalf of Cosby for tortious interference with prospective business relationships and breach of contract. The jury awarded damages to Cosby in the amount of $5,604.44 for breach of the Bonus Agreement, $92,500 compensatory damages, and $500,000 punitive damages for tortious interference with Cosby's attempt to secure employment after his termination. The jury also awarded punitive damages against Warner for $10,000 although it did not award compensatory damages against Warner.

*462 II. Tortious Interference

A party seeking redress pursuant to a claim for tortious interference with a business relationship must show 1) the existence of a business relationship, not necessarily evidenced by an enforceable contract, 2) knowledge of the relationship on the part of the defendant, 3) an intentional and unjustified interference with the relationship, and 4) damage to the plaintiff as a result of the tortious interference with the relationship. See McCurdy v. Collis, 508 So.2d 380, 383 (Fla. 1st DCA 1987). An action for tortious interference with a prospective business relationship requires a business relationship evidenced by an actual and identifiable understanding or agreement which in all probability would have been completed if the defendant had not interfered. See Ferguson Transp., Inc. v. North Am. Van Lines, Inc., 687 So.2d 821, 822 (Fla.1996). Once a plaintiff has made a prima facie case, the burden shifts to the defendant to justify that the interference was lawful competition. See Wackenhut Corp. v. Maimone, 389 So.2d 656, 658 (Fla. 4th DCA 1980).
The president of Sunshine, Lawrence Calufetti, testified that Warner called him shortly after he hired Cosby and told him about the non-compete agreement and that hiring Cosby in operations would "be a disaster." Calufetti added that he would probably have hired Cosby even if he had known about the agreement. Because Cosby was hired by Sunshine Services, he has not established that ISS tortiously interfered with business relations between him and Sunshine. The only evidence presented that ISS tortiously interfered with Cosby's prospective business relationship with Controlled Services came in the form of Cosby's hearsay testimony that a "source" told him that the president of Controlled Services did not hire him because he learned of the non-compete agreement; however, no testimony was presented by the alleged "source." In addition, Cosby failed to present competent substantial evidence of an actual and identifiable agreement between Controlled Services and himself which in all probability would have been completed had the alleged interference not occurred. Thus, the trial court erred in denying appellants' motion for a directed verdict on Cosby's tortious interference claims.
We have examined the other issues raised on appeal and cross-appeal, and find no error. We remand to the trial court to strike the punitive damage awards against ISS and Warner consistent with this opinion.
AFFIRMED in part; REVERSED in part.
WARNER, C.J., and CONNER, BURTON C., Associate Judge, concur.