[DO NOT PUBLISH]

In the

# United States Court of Appeals

## For the Eleventh Circuit

_____

No. 23-10070

_____

ONEMATA CORPORATION,

                    Plaintiff-Counter Defendant-Appellee,

*versus*

SABIRA AREFIN,
ASHFAQ RAHMAN,

                    Defendants-Counter Claimants
                    Third Party Plaintiffs-Appellants.

_____

Appeals from the United States District Court
for the Southern District of Florida
D.C. Docket No. 0:20-cv-62002-WPD

_____

Before WILSON, GRANT, and LAGOA, Circuit Judges.

PER CURIAM:

This case arises from the sale of an information technology company, LocalBlox, by its founders, Ashfaq Rahman and Sabira Arefin.  A Stock Purchase Agreement (SPA) was executed between Rahman, Arefin, and Enscicon, Onemata's predecessor in interest. The claims at issue arise from alleged breaches of the SPA and related happenings at trial.  After careful review, and with the benefit of oral argument, we affirm the district court.[1]

## I.    Judgment as a Matter of Law

Rahman argues that the district court erred in denying his motion for judgment as a matter of law (JMOL) on the tortious interference claim.  Rahman and Arefin argue that the district court erred in denying their JMOL motions on sufficiency of the evidence grounds.  Arefin argues that the district court erred in denying her renewed JMOL as to the promissory note claim.  We will address each argument in turn.[2]

---

[1] Because we write for the parties and assume their familiarity with the record, we set out only what is necessary to explain our decision.

[2] Onemata's motion to strike Arefin's and Rahman's notice of citations is GRANTED.

### A. Tortious Interference

We review de novo whether a district court correctly ruled on a JMOL. *McGinnis v. Am. Home Mortg. Serv., Inc.*, 817 F.3d 1241, 1254 (11th Cir. 2016). We review the trial evidence at the time Onemata closed its case to determine whether the district court correctly determined such evidence warranted a jury's evaluation. *Nat'l Fire Ins. Co. of Hartford v. Fortune Constr. Co.*, 320 F.3d 1260, 1267–68 (11th Cir. 2003). In so doing, we must apply the same standard as the district court and draw all inferences in favor of the nonmoving party. *Collado v. United Parcel Service, Co.*, 419 F.3d 1143, 1149 (11th Cir. 2005). "[I]n ruling on a party's renewed motion under Rule 50(b) after the jury has rendered a verdict, a court's sole consideration of the jury verdict is to assess whether that verdict is supported by sufficient evidence." *Chaney v. City of Orlando*, 483 F.3d 1221, 1227 (11th Cir. 2007).

Under Florida law, the elements of tortious interference with a business relationship are: (1) "the existence of a business relationship" that affords the plaintiff existing or prospective legal rights; (2) the defendant's "knowledge" of the business relationship; (3) the defendant's "intentional and unjustified interference with the relationship"; and (4) "damage to the plaintiff as a result of the breach." *Ethan Allen, Inc. v. Georgetown Manor, Inc.*, 647 So. 2d 812, 814 (Fla. 1994). A business relationship need not be evidenced by a contract, but it generally requires "an understanding between the parties [that] would have been completed had the defendant not interfered." *Id.* (quotation omitted).

Onemata prevails on the tortious interference claim and relevant damages.  The existence of the necessary business relationship is evidenced in the SPA.  Page 4, ¶ 2.5.1 of the SPA states that LocalBlox will be integrated into Onemata after closing: "The Parties acknowledge that, after the Closing, Buyer [Onemata] will work to integrate the Company [LocalBlox] into and with the business of Buyer and its Affiliates."  Because Onemata was working with LocalBlox intimately in business and as a majority shareholder, damage to LocalBlox directly damaged Onemata, and benefits to LocalBlox directly benefitted Onemata.  Rahman's emails evince the merging of the businesses, as Rahman disparages Onemata—not LocalBlox—when urging TrueInfluence to stop working with the business: "The [O]nemata team didn't have the sophistication to contribute in any meaningful way. . . . [T]hese Onemata guys haven't contributed a single line of code or brought any new customer compared to what Sabira [Arefin] and I did."  All parties understood the companies Onemata and LocalBlox to be acting in concert and damage to one would be damage to the other.  As such, this business relationship need not be evidenced by a contract, as "an understanding between the parties would have been completed had the defendant not interfered."  *Ethan Allen*, 647 So. 2d at 814.  The rest of the *Ethan Allen* test is satisfied, because there was evidence to support a reasonable jury's finding that: (2) Rahman knew of the business relationship as one of the previous owners of LocalBlox; (3) Rahman's emails once employed with TrueInfluence were intentional and unjustified interference with

TrueInfluence's relationship with LocalBlox; and (4) Onemata suffered damages by the severing of the business relationship. *See id.*

Further, as argued by Onemata, the contract terms more than supply the necessary evidence to support the $2 million damage award for the tortious interference claim. A reasonable jury could infer that had Rahman not interfered, the agreement could have lasted ten years, at a minimum of $17,000 per month, for a total of $2,040,000. After de novo review and viewing the evidence in the light most favorable to Onemata, sufficient evidence supported the claim and the court's denial of Rahman's JMOL. As such, we affirm the district court on this issue.

### B. Sufficient Evidence: Breach of Contract Damages

"An appellate court cannot examine the sufficiency of the evidence supporting the jury's verdict unless the objecting party filed a timely motion for directed verdict with the trial court." *Buland v. NCL (Bahamas) Ltd*, 992 F.3d 1143, 1153 (11th Cir. 2021) (quotation omitted and alteration adopted). "When a party allows an issue to go to the jury without first objecting to the sufficiency of the evidence, our review on appeal is limited to inquiring into whether *any* evidence supported submission of the issue." *Id.* (internal quotation omitted and alteration adopted).

If "scientific, technical, or other specialized knowledge will help the trier of fact to understand the evidence or to determine a fact in issue," an expert may testify thereto. Fed. R. Evid. 702(a). An expert can provide opinion testimony if it is more likely than not that testimony is "based on sufficient facts or data." *Id.* at

702(b); *see also Daubert v. Merrell Dow Pharms., Inc.*, 509 U.S. 579, 597 (1993).

Rahman and Arefin levy multiple reasons why the evidence was legally insufficient to support the verdict on the breach of contract damages claim. The thrust of their argument consists of issues taken with Ronald L. Seigneur's expert valuation, including his consideration of unpaid sales tax when valuing LocalBlox. But their claims still fail.

First, because Rahman and Arefin failed to raise these issues in their Rule 50 motions, our review becomes extremely deferential. We examine "whether *any* evidence supported submission of the issue." *Buland*, 992 F.3d at 1153 (quotation omitted). Under these strictures, we cannot hold that *zero* evidence supported the $5 million verdict.

Seigneur's "specialized knowledge" of business valuations was relevant and without question helped the trier of fact, so it was fine that he testified thereto. Fed. R. Evid. 702(a). It is similarly clear that Seigneur's testimony was "more likely than not . . . based on sufficient facts or data"—Seigneur gave a laundry list of sufficient data points used in his valuation. *See* Fed. R. Evid. 702; *Daubert*, 509 U.S. at 597.

Even setting aside Seigneur's valuation, Onemata paid Rahman and Arefin $4,573,093 in consideration—taking the $2,000,000 in cash, which they were paid, plus the stock that the Rahman and Arefin received, worth $2,573,093. Further, Onemata incurred additional damages totaling $657,215.88, which was proved through

evidence adduced at trial: the undisclosed Acton settlement of $80,000, the undisclosed Embark invoice of $15,000, the undisclosed Amazon server invoices of $307,215.88, and the $255,000 in cash taken out by Arefin just prior to closing. This more than totals the $5 million verdict entered by the jury, even without examining the Seigneur valuation. Because there is more than an absolute absence of evidence to support the jury's verdict, we affirm the district court on this issue.

## C. Equitable Estoppel

Any renewal of a motion for judgment as a matter of law under Rule 50(b) must be based on the same grounds as the original request for judgment as a matter of law prior to the case being submitted to the jury. *Chaney*, 483 F.3d at 1227.

Arefin claims that the court erred in denying her renewed JMOL as to the promissory notes because Onemata and Enscicon II did not properly assert the defense of equitable estoppel. The four promissory notes in the SPA amounted to $2,994,826 and were never paid to Rahman and Arefin. Arefin states that the only way a reasonable jury could determine that Onemata and Enscicon II do not owe these notes is under their equitable estoppel defense. As Onemata argues, this argument is waived. Arefin did not raise this argument in her initial JMOL. As such, Arefin's claims that she preserved this argument by raising it in her renewed JMOL are without merit. *See Chaney*, 483 F.3d at 1227. We affirm the district court on this issue.

## II.    General Verdict Form

Next, Rahman and Arefin argue that the district court abused its discretion in using a general verdict form  While special verdicts greatly benefit an appellate court's review of jury findings, *Jones v. Miles*, 656 F.2d 103, 106 n.3 (5th Cir. 1981),[3] the district court has "wide discretion as to whether to require [a] jury to return a special or general verdict," *Garwood v. Int'l Paper Co.*, 666 F.2d 217, 222 (5th Cir. Unit B 1982).[4]  We have found this discretion to be far-reaching, holding that a district court did not abuse its discretion even when *both* parties requested a special verdict form.  *Id.*

In this case, the district court did not abuse the wide discretion afforded it by our precedent.  The district judge's explanation for adopting Onemata's suggested general verdict form and denying Rahman's objection for a specific verdict form was well-reasoned.  While discussing verdict forms, the district judge stated: "I'm going the [sic] give the instruction the way it is.  I think this has been a very difficult, complicated case, and whatever I can to do [sic] the jury's job a little easier, I'm going to try to do that." This decision was logical and well within the district court's

---

[3] *Bonner v. City of Prichard*, 661 F.2d 1206, 1209 (11th Cir. 1981) (en banc) (wherein the Eleventh Circuit adopted all decisions of the former Fifth Circuit handed down prior to October 1, 1981, as binding precedent).

[4] Because Eleventh Circuit judges were the same judges who decided former Fifth Circuit decisions by Unit B panel and en banc, the Unit B panel decisions are binding on the Eleventh Circuit.  *See Stein v. Reynolds Sec., Inc.*, 667 F.2d 33, 34 (11th Cir. 1982).

sweeping discretion.  *See Garwood*, 666 F.2d at 222.  Because the district court did not abuse its discretion, we affirm on this issue.

## III.    Expert Testimony

Rahman and Arefin argue that the district court abused its discretion in denying their rebuttal expert's testimony.  Evidence admissibility rulings are reviewed under an abuse of discretion standard.  *City of Tuscaloosa v. Harcros Chemicals, Inc.*, 158 F.3d 548, 556 (11th Cir. 1998).  When reviewing introduction of expert evidence, our review is even more limited, since "we *will not* reverse the decision of the trial court regarding the exclusion or admission of such evidence unless the trial court's decision is 'manifestly erroneous.'" *Michigan Millers Mut. Ins. Corp. v. Benfield*, 140 F.3d 915, 921 (11th Cir. 1998) (emphasis added) (quoting *General Elec. Co. v. Joiner*, 522 U.S. 136, 142 (1997)).  We have held that a district court has "broad discretion to exclude untimely expert testimony." *Guevara v. NCL (Bahamas) Ltd.*, 920 F.3d 710, 718 (11th Cir. 2019).

Rahman and Arefin argue that the subject matter in Dr. Cole's report would disprove the Daniel O'Day report findings, and thus it was an abuse of discretion to not include it.  Further, they contend that not allowing Dr. Cole's full report affected their substantial rights because the jury entered a verdict without the benefit of all relevant evidence.  This, they claim, warrants vacatur.  Neither Rahman nor Arefin address their failure to submit the desired information before the court-set deadline.

Regardless of whether Dr. Cole's report was substantially related to and able to rebut O'Day's report, the district court acted

within its discretion in disallowing evidence that exceeded the scope of O'Day's report after the deadline had passed. *See Guevara*, 920 F.3d at 718. Because the district court's exclusion of the testimony was not "manifestly erroneous," we *"will not* reverse." *Michigan Millers Mut. Ins. Corp.*, 140 F.3d at 921 (emphasis added) (internal quotation omitted). We affirm the district court on this issue.

## IV.    Motions for New Trial, to Amend the Judgment, and Remittitur

Rahman and Arefin argue that the district court abused its discretion in denying their motions for new trial and remittitur. We review rulings on motions for a new trial for abuse of discretion, and deference to the district court "is particularly appropriate where a new trial is denied and the jury's verdict is left undisturbed." *McGinnis*, 817 F.3d at 1255 (quotation omitted). The abuse of discretion standard equally applies to motions to amend the judgment and remittitur. *Thomas v. Farmville Mfg. Co., Inc.*, 705 F.2d 1307, 1307 (11th Cir. 1983) (per curiam) (stating abuse of discretion review applies to motions to amend the judgment); *Bonura v. Sea Land Serv., Inc.*, 505 F.2d 665, 669 (5th Cir. 1974) (explaining that decisions regarding remittitur are reviewed for abuse of discretion). Specifically, our review of a district court's decision "whether to remit a jury's award of compensatory damages is highly deferential." *Griffin v. City of Opa-Locka*, 261 F.3d 1295, 1315 (11th Cir. 2001). Notably, "[b]ecause a less stringent standard applies to a motion for a new trial than to a motion for judgment as a matter of law, failure to meet the former standard is fatal to the

latter." *Dudley v. Wal-Mart Stores, Inc.*, 166 F.3d 1317, 1320 n.3 (11th Cir. 1999) (internal quotation omitted).

A judge should grant a motion for a new trial when "the verdict is against the *clear* weight of the evidence or will result in a miscarriage of justice, even though there may be substantial evidence which would prevent the direction of a verdict." *Hewitt v. B.F. Goodrich Co.*, 732 F.2d 1554, 1556 (11th Cir. 1984) (internal quotation omitted and alteration adopted) (emphasis added). The Florida Supreme Court has held that, in regard to motions for a new trial, the remittitur statute does not change "the longstanding principle[]" that "the trial judge should not sit as a 'seventh juror,' thereby substituting his or her resolution of the factual issues for that of the jury." *Poole v. Veterans Auto Sales and Leasing Co.*, 668 So. 2d 189, 191 (Fla. 1996).

State substantive law provides the rubric for determining whether a verdict is excessive in diversity cases, while federal law provides the rubric for determining whether any excess warrants a new trial. *Quality Foods, Inc. v. U.S. Fire Ins. Co.*, 715 F.2d 539, 542 n.2 (11th Cir. 1983). Florida law provides five factors for analyzing a verdict's excessiveness: (1) whether the award amount indicates the trier of fact exhibited "prejudice, passion, or corruption" in arriving at the same; (2) whether the trier of fact "ignored [] evidence . . . or misconceived the merits of the case relating to the amounts of damages"; (3) whether the trier of fact "took improper elements of damages into account" or speculated about damages; (4) whether the verdict is "reasonabl[y]" related to the amount of

damages proved; and (5) whether "the amount is supported by evidence such that it could be adduced in a logical manner by reasonable persons." Fla. Stat. § 768.74(5)(a)–(e).  If the court decides the verdict was excessive, the maximum recovery rule would guide the evaluation to determine the amount of remittitur that may be ordered in place of a new trial. *Jackson v. Magnolia Brokerage Co.*, 742 F.2d 1305, 1306 (11th Cir. 1984).[5]

Rahman and Arefin argue that the district court abused its discretion in not granting a new trial, amending the judgment, or remitting the verdict because $657,215.88 (or alternatively $2,235,093) is the maximum verdict amount permitted by the evidence produced at trial.  They maintain that the jury's reliance on Seigneur's valuation to determine damages was improper.  In concluding that $5 million was not the proper damages amount, Rahman states without elaboration that the jury fulfilled all five requirements under Florida's remittitur statute.

Reviewing the district court's ruling under the "highly deferential" standard, Onemata succeeds on this claim. *Griffin*, 261 F.3d at 1315.  The district judge stated in its order denying these motions that "there was ample, competent evidence adduced at trial to support an award of *at least* the $5 million awarded by the

---

[5] The maximum recovery rule requires the panel to determine "the maximum amount of deviation from that verdict that could be allowed without requiring a new trial." *Lowe v. General Motors Corp.*, 624 F.2d 1373, 1383 (5th Cir. 1980) (quotation omitted).  In so doing, we examine the maximum amount the jury could have reasonably found. *See Gorsalitz v. Olin Mathieson Chemical Corp.*, 429 F.2d 1033, 1046 (5th Cir. 1970).

jury in contract damages." It further stated that a reasonable jury would be "well-supported" in its credibility determinations, determinations of fact, and "any logical inferences arising therefrom," ultimately finding the awards were not excessive. These statements are supported when evaluating the evidence produced at trial.

The SPA specifically sets forth elements of the damages incurred by Onemata as presented and argued at trial. The SPA stated Rahman and Arefin will be paid $2,000,000 in cash, that they will receive stock in the Buyer with a deemed value of $2,573,093, and the Rahman and Arefin would receive four promissory notes of just under $3 million. In awarding $5 million in contract damages, the consideration paid by Onemata to Rahman and Arefin was $4,573,093—taking the $2,000,000 in cash, which they were paid, plus the stock that the Rahman and Arefin received, $2,573,093. Further, Onemata incurred additional damages totaling $657,215.88, which is proved through evidence at trial: the undisclosed Acton settlement of $80,000, the undisclosed Embark invoice of $15,000, the undisclosed Amazon server invoices of $307,215.88, and the $255,000 in cash taken out by Arefin just prior to closing. These amounts, when added to the consideration received by Rahman and Arefin, exceed the $5 million awarded by the jury. Because the evidence adduced at trial supports the damages amount awarded, a new trial is not warranted because the verdict is far from being "against the *clear* weight of the evidence," and we avoid granting new trials in these instances. *Hewitt*, 732 F.2d at 1556 (emphasis added). Further, none of the five statutory factors

are met to prove the award was excessive. *See* Fla. Stat. § 768.74(5)(a)–(e). Therefore, we affirm the district court's rulings on Rahman and Arefin's motions.

## V.    SPA Clause

Arefin frames the issue as follows: whether the district court should have honored the 90-day purchase price adjustment/liquidated damages provision in the contract which Onemata did not follow before bringing the lawsuit 10 months after signing the SPA. As Onemata contends, section 2.3 was not a liquidated damages provision, and neither was it the exclusive method to redress breaches for misrepresentations in the SPA. More importantly, Arefin did not raise section 2.3 in her Rule 50 motion, nor did she request a jury instruction on this issue as she frames it on appeal. For the reasons stated above, she is precluded from raising these issues now. *Chaney*, 483 F.2d at 1227; Fed. R. Civ. P. 50, 51(d). We therefore affirm the district court.

## VI.    Ratification, Mitigation of Damages, and Caveat Emptor

Arefin argues that the district court erred in not reversing the final judgment based on ratification, mitigation of damages, or caveat emptor.

It is well settled that we normally refuse to consider arguments raised for the first time on appeal. *Federal Deposit Ins. Corp. v. 232, Inc.*, 920 F.2d 815, 817 (11th Cir. 1991) (per curiam). This rule applies to arguments that could have been raised in opposition to Rule 50 motions and, as such, to the initial Rule 50 motions as well. *Cf. Howard v. Walgreen Co.*, 605 F.3d 1239, 1243–44 (11th Cir.

2010) (explaining that the plaintiff "forfeited his right to raise [his claim] on appeal by failing to raise it" in the district court "in response to Rule 50(b) motion" for JMOL).

Regarding the failure to give a specific jury instruction, a party may assign as error:

> (A) an error in an instruction actually given, if that party properly objected; or
>
> (B) a failure to give an instruction, if that party properly requested it and—unless the court rejected the request in a definitive ruling on the record—also properly objected.

Fed. R. Civ. P. 51(d)(1).

Arefin fails to cite any law in her initial brief to support these last claims, and she did not raise any of these issues as grounds for her Rule 50 motions.  As such, we consider them waived and decline to address them on appeal.  Further, Arefin did not request jury instructions on caveat emptor and, under Federal Rule of Civil Procedure 51, she cannot assign error for the failure to give these instructions.  The jury was instructed on mitigation of damages, yet no objection was made to this instruction.  Thus, her arguments are without merit.  We affirm the district court on these issues.

### VII.   Conclusion

We affirm the district court in all respects.

**AFFIRMED.**

23-10070          Lagoa, J., Dissenting in Part          1

LAGOA, Circuit Judge, Concurring in Part and Dissenting in Part:

I join Part I.B through Part VI of the Court's opinion, but I respectfully dissent as to Part 1.A. Onemata failed, as a matter of law, to establish at trial that Ashfaq Rahman tortiously interfered with a cognizable business relationship between Onemata and TrueInfluence. And, even if Onemata had a cognizable relationship with TrueInfluence, Onemata's evidence of damages is speculative such that no reasonable jury could render a $2,000,000.00 award in favor of Onemata on its tortious-interference claim.

At its core, this case is about the sale of LocalBlox, LLC, an information technology company that develops digital platforms. Before the sale of LocalBlox, Defendants-Appellants Ashfaq Rahman and Sabira Arefin owned 9.7 million out of roughly 10.3 million shares of LocalBlox's common stock. Under the Stock Purchase Agreement, Rahman and Arefin agreed to sell all their shares to Enscicon Acquisitions, LLC. Plaintiff-Appellee Onemata later merged with Enscicon Acquisitions, and Onemata is now the majority shareholder of LocalBlox. But, as Onemata's co-founder agreed at trial, Onemata never merged with LocalBlox.

In conjunction with the Stock Purchase Agreement, Rahman became an employee of LocalBlox and Arefin became a consultant at LocalBlox. But after ten months, LocalBlox fired Arefin and Rahman. Rahman then became an employee at TrueInfluence—one of LocalBlox's preexisting customers. At the time, TrueInfluence and LocalBlox had a service agreement that automatically renewed each year unless either party gave notice of an

intent not to renew the agreement. But, after TrueInfluence hired Rahman, TrueInfluence declined to renew its contract with LocalBlox. Onemata introduced two emails at trial in which Rahman discouraged TrueInfluence from doing business with LocalBlox after Onemata purchased LocalBlox.

At trial, Onemata alleged that Rahman was liable to Onemata for tortiously interfering in the business relationship between LocalBlox and TrueInfluence. Before the jury's verdict, Rahman moved for judgment as a matter of law on Onemata's tortious-interference claim. Additionally, after the jury's $2,000,000.00 verdict against Rahman for tortious interference, Rahman renewed his motion for judgment as a matter of law and alternatively moved for a new trial or remittitur. The district denied Rahman's motions.

In Florida, "[t]o establish tortious interference with a contract or business relationship," the plaintiff must prove four elements:

> '(1) the existence of a business relationship, not necessarily evidenced by an enforceable contract, under which *the plaintiff* has legal rights; (2) the defendant's knowledge of the relationship; (3) an intentional and unjustified interference with the relationship by the defendant; and (4) damage to the plaintiff as a result of the interference.'

*Font & Nelson, PLLC v. Path Med., LLC*, 317 So. 3d 134, 138–39 (Fla. Dist. Ct. App. 2021) (emphasis added) (quoting *Salit v. Ruden,*

23-10070          Lagoa, J., Dissenting in Part          3

*McClosky, Smith, Schuster & Russell, P.A.*, 742 So. 2d 381, 385 (Fla. Dist. Ct. App. 1999)).  Also, even though "[a] protected business relationship need not be evidenced by an enforceable contract," "'the alleged business relationship must afford *the plaintiff* existing or prospective legal or contractual rights.'" *Ethan Allen, Inc. v. Georgetown Manor, Inc.*, 647 So. 2d 812, 814 (Fla. 1994) (emphasis added) (quoting *Register v. Pierce*, 530 So.2d 990, 993 (Fla. Dist. Ct. App. 1988)). A plaintiff who fails to present evidence that the defendant interfered with the plaintiff's own business relationship fails, as a matter of law, to satisfy the first element of a tortious interference claim. *See ISS Cleaning Servs. Grp., Inc. v. Cosby*, 745 So. 2d 460, 462 (Fla. Dist. Ct. App. 1999) (holding that the trial court erred in denying a defendant's motion for directed verdict partly because the plaintiff "failed to present competent substantial evidence of an actual and identifiable agreement between Controlled Services and himself"); *Lake Gateway Motor Inn, Inc. v. Matt's Sunshine Gift Shops, Inc.*, 361 So. 2d 769, 771–72 (Fla. Dist. Ct. App. 1978) (reversing the denial of a directed verdict partially because the plaintiff failed to present evidence "that an advantageous business relationship ever actually existed between the [plaintiff] and his successor").

In its brief and at oral argument, Onemata did not contest any of the principles of law enunciated above.[1]  Thus, under Florida law, the result is clear: no reasonable jury could conclude that Rahman was liable to Onemata for tortious interference.  Onemata

---

[1] In fact, Onemata did not cite any legal authority in the section of its brief on tortious interference.

presented evidence that Rahman may have interfered with a business relationship between *LocalBlox* and TrueInfluence, but Onemata never presented evidence that Rahman tortiously interfered with a cognizable relationship between *Onemata* and TrueInfluence. During trial, William Smith—Onemata's co-founder and first witness—expressly agreed that TrueInfluence "was LocalBlox's customer" and "was not Onemata's customer." Indeed, TrueInfluence never contracted with Onemata; it contracted only with LocalBlox. And, although Onemata purchased a majority of LocalBlox's shares, Smith agreed at trial that "LocalBlox never merged into Onemata." The district court thus should have granted judgment as a matter of law to Rahman because Onemata failed to prove the existence of a business relationship between Onemata and TrueInfluence under which Onemata had legal rights. *See ISS Cleaning Services*, 745 So. 2d at 462; *Lake Gateway Motor*, 361 So. 2d at 771–72.

Despite Onemata's failure to provide any evidence of a cognizable relationship with TrueInfluence, the Court sustains a $2,000,000.00 judgment against Rahman for tortious interference. The majority's decision rests solely on one sentence in Paragraph 2.5.1 of the Stock Purchase Agreement. *See* Majority Op. at 3–4. Paragraph 2.5.1 provides:

> The Parties acknowledge that, after the Closing, Buyer will work to integrate the Company [LocalBlox] into and with the business of Buyer and its Affiliates.

23-10070          Lagoa, J., Dissenting in Part          5

But even if Onemata agreed to integrate LocalBlox into its business activities, that does not mean that LocalBlox and Onemata became the same entity. Instead, the record is clear that Onemata and LocalBlox never merged and Onemata is merely the majority shareholder of LocalBlox. And "[o]rdinarily, a shareholder cannot sue for wrongs done to a corporation, because the corporation is a separate entity." *Sabey v. Howard Johnson & Co.*, 5 P.3d 730, 735 (Wash. App. 2000).[2] "Even a shareholder who owns all or most of the stock, but who suffers damages only indirectly as a shareholder, cannot sue as an individual." *Id.* Because Onemata failed to present evidence that it had a cognizable relationship with TrueInfluence, the district court erred by denying Rahman's motion for a directed verdict on the tortious-interference claim.

Alternatively, even if the majority is correct about the business-relationship element, no reasonable jury could conclude that Onemata suffered $2,000,000.00 in damages. As noted above,

---

[2] Rahman argues that Washington law controls the shareholder-standing question because LocalBlox is a Washington corporation. Onemata does not contest Rahman's position. In any event, this Court and Florida courts also recognizes that shareholders generally have no right to a cause of action that belongs to a corporation. *See Amoco Oil Co. v. Gomez*, 379 F.3d 1266, 1277 (11th Cir. 2004); *Horvath v. Gen. Motors Corp.*, 636 So. 2d 771, 773 (Fla. Dist. Ct. App. 1994); *Lincoln Oldsmobile, Inc. v. Branch*, 574 So. 2d 1111, 1114 (Fla. Dist. Ct. App. 1990); *Schaffer v. Universal Rundle Corp.*, 397 F.2d 893, 896 (5th Cir. 1968); *United States v. Palmer*, 578 F.2d 144, 145–46 (5th Cir. 1978) ("The law is clear that only a corporation and not its shareholders, not even a sole shareholder, can complain of an injury sustained by, or a wrong done to, the corporation."); *see also Bonner v. City of Prichard, Ala.*, 661 F.2d 1206, 1209 (11th Cir. 1981).

6                    Lagoa, J., Dissenting in Part               23-10070

TrueInfluence and LocalBlox had a service agreement that automatically renewed each year unless notice was given by either party of intent not to renew. And, under the terms of a 2019 amendment to the service agreement, TrueInfluence agreed to provide LocalBlox monthly payments of $17,000 or 9% of qualifying revenue, whichever was greater, for LocalBlox's services. Based on these numbers, the majority reasons that "had Rahman not interfered, the agreement *could have* lasted ten years, at a minimum of $17,000 per month, for a total of $2,040,000." Majority Op. at 5 (emphasis added).

That reasoning is completely speculative, however. It assumes that LocalBlox's relationship with TrueInfluence would have lasted ten years absent Rahman's interference. No evidence in the record, however, supports such a number, and Florida law rejects jury verdicts premised on such speculative assumptions. *See Brough v. Imperial Sterling Ltd.*, 297 F.3d 1172, 1177 (11th Cir. 2002) (reversing the jury's damages award because "'future commissions on other Florida properties' was based on speculation that ISL would sell its property"); *Ctr. Chem. Co. v. Avril, Inc.*, 392 F.2d 289, 290 (5th Cir. 1968) ("There can be no recovery under Florida law where the evidence is not sufficient to enable the jury to assess damages with a reasonable degree of certainty without leaving the amount awarded to speculation and conjecture.");[3] *Douglass*

---

[3] Opinions issued by the former Fifth Circuit prior to the close of business on September 30, 1981, are binding precedent in our Circuit. *Bonner*, 661 F.2d at 1209.

23-10070                 Lagoa, J., Dissenting in Part                 7

*Fertilizers & Chem., Inc. v. McClung Landscaping, Inc.*, 459 So. 2d 335, 337 (Fla. Dist. Ct. App. 1984).

For the above reasons, I respectfully dissent as to Part 1.A. of the majority opinion, but I concur as to Part I.B through Part VI of the majority opinion.