875 So.2d 767 (2004)
Michael MURPHY, Sr., Appellant,
v.
SARASOTA OSTRICH FARM/RANCH, INC., and Christina Shook, Appellees.
Christina Shook, Cross-Appellant,
v.
Sarasota Ostrich Farm/ Ranch, Inc., Cross-Appellee.
Nos. 2D02-5576, 2D03-1356.
District Court of Appeal of Florida, Second District.
June 18, 2004.
*768 Richard R. Garland of Dickinson & Gibbons, P.A., Sarasota, for Appellant.
Andrew H. Cohen of Hankin, Persson, Davis, McClenathen & Darnell, Sarasota, for Appellee Sarasota Ostrich Farm/Ranch, Inc.
Daniel Joy of Law Office of Daniel Joy, Sarasota, for Appellee/Cross-Appellant Christina Shook.
CANADY, Judge.
Michael Murphy, Sr., and Christina Shook, the defendants in a tort action, appeal a final judgment and postjudgment award of costs against them in favor of Sarasota Ostrich Farm/Ranch, Inc. (the Ostrich Farm). Because the evidence adduced at trial did not establish that Murphy and Shook caused certain of the damages on which the judgment was based, we reverse the final judgment in part and affirm the award of costs.
The suit against Murphy and Shook by the Ostrich Farm was based on allegations that two dogs, Taz and Bear, caused death or injury to certain ostriches owned by the Ostrich Farm. At trial, testimony was presented concerning incidents in which the dogs entered the property of the Ostrich Farm to harass and prey on the ostriches. It was established that Shook was the owner of the dogs. The relationship between Murphy and the dogs was disputed, but the evidence showed that the dogs were keptexcept when they wandered about the neighborhoodon property owned by Murphy. The Ostrich Farm asserted a claim against Shook and Murphy under section 767.01, Florida Statutes (2000), for liability as owners of the dogs. A claim based on negligence was asserted against Murphy.
The special verdict form shows that the jury determined that the dogs caused injury or death to the ostriches owned by the Ostrich Farm. The jury also determined that Murphy was not an owner of the dogs but that his negligence was a legal cause of the damages suffered by the Ostrich Farm. The jury awarded the Ostrich Farm (a) $3840 in damages for the death of yearlings; (b) $424 for "scarred hides"; and (c) $52,000 for "lost bird production for the 2001 breeding season."
Murphy and Shook raise a number of issues as grounds for reversing the judgment against them. None of the issues related to the award of damages for the death of yearlings or the scarred hides has merit. The defendants have, however, raised a meritorious issue with respect to the award for lost bird production for the 2001 breeding season. We conclude that the portion of the judgment related to the lost bird production must be reversed because the evidence adduced at trial did not establish that the depredations of the dogs was a legal cause of the harm for which the damages were awarded.
At trial, the Ostrich Farm relied on the expert testimony of Clarence Dunning, a doctor of veterinary medicine, to establish that the entry of the dogs into the ranch property and the resulting harassment of the ostriches caused a reduction in bird production. Dr. Dunning gave extensive testimony concerning the impact of environmental conditions and living circumstances in the breeding of ostriches. He *769 testified that a male ostrich can be stressed to the point where he will not breed even if he is not physically impacted by the stressor. He stated:
[I]f there are things there that make them uncomfortable, if dogs come in there, if people come in, if the traffic is too high, if you have lawn mowers coming by, anything that the animal might react to, then you have to evaluate ... what he's responding to and what stresses him. And if something is stressing them and they feel they had to defend their territory, they're not going to breed.
At no point in his testimony, however, did Dr. Dunning state that the stress to the ostriches arising from the incidents in which Taz and Bear were involved more likely than not was a substantial factor in bringing about any loss in production suffered by the Ostrich Farm. It is clear from Dr. Dunning's testimony that Taz and Bear may have had something to do with the reduced production of ostriches. Such testimony is not, however, sufficient to establish the element of legal causation on which the Ostrich Farm's tort claim must be based.
"[T]his evidence at best raises a mere possibility of legal causation[ ] and nothing more." Greene v. Flewelling, 366 So.2d 777, 781 (Fla. 2d DCA 1978). "It has long been held that a[p]ossibility of causation is not sufficient to allow a claimant to recover." Id. Under Florida law, a tort claimant must meet the "more likely than not standard of causation." Gooding v. Univ. Hosp. Bldg., Inc., 445 So.2d 1015, 1018 (Fla.1984).
"[A plaintiff] must introduce evidence which affords a reasonable basis for the conclusion that it is more likely than not that the conduct of the defendant was a substantial factor in bringing about the result. A mere possibility of such causation is not enough[,] and when the matter remains one of pure speculation or conjecture, or the probabilities are at best evenly balanced, it becomes the duty of the court to direct a verdict for the defendant."
Id. (quoting Prosser, Law of Torts § 41 (4th Ed.1971) (footnotes omitted)).
Here, there is no "`reasonable basis for the conclusion that it is more likely than not that the conduct'" for which the appellants were responsible "`was a substantial factor in bringing about'" the lost bird production. Id. Based on the testimony at trial, the jury could do nothing more than speculate about the issue of causation. The defendants therefore were entitled to a directed verdict on the issue of lost bird production. Accordingly, the award of damages for lost bird production is reversed.
Affirmed in part, reversed in part, and remanded.
VILLANTI, J., and SEXTON, SUSAN, Associate Judge, concur.