MARX, KRISTA, Associate Judge.
Realauction.com, LLC, and Lloyd E. McClendon, III, President of Realauction, appeal the final judgment in favor of Grant Street Group, Inc., in a suit filed by Grant Street alleging defamation and tortious interference with Grant Street’s business relationship with Broward County. Realauction and McClendon argue that their post-verdict motion for directed verdict should have been granted as to a 2006 tortious interference claim. We agree and reverse. Our resolution of this issue renders moot the additional argument advanced by Rea-lauction regarding damages. We find no merit in the issues raised by Grant Street’s cross-appeal and affirm the trial court’s decision to grant a directed verdict on all other claims.
Grant Street develops software applications and provides internet auction and tax collection services to government and financial institutions. In February of 2005, Broward County began negotiations with Grant Street for an annual contract for services. In furtherance of the negotiations, an April 22, 2005 meeting was scheduled between Grant Street and the County-
*1058 Realauction is a competitor of Grant Street in providing online tax sale auction services. On April 20, 2005, Realauction’s President, Lloyd McClendon, III, sent an email to Broward County Commissioner Lois Wexler. The email alleged in pertinent part:
Grant Street is involved in multiple law suits and is currently being sued by some of the major institutional buyers because of their business practices during last year’s sale, I understand the State Attorneys [sic] General Office has also started an inquiry into Grant Street’s pricing and possible conflict of interest.
On April 22, 2005, Grant Street received notice from the County’s Director of Revenue Collection, Judith Fink, that the County was terminating the negotiations.
Six months later, the County issued a Request for Proposals (RFP) for online services to be provided for 2006. After the RFP process, Grant Street was selected and contract negotiations resulted in a proposed contract with the County. The 2006 contract also failed to come to fruition. As a result, Grant Street asserted that Realauction’s email tortiously interfered with its business relationship with the County in both 2005 and 2006.
As stated above, the trial court granted Realauction’s post-verdict motion on all counts but let stand the tortious interference count for the 2006 business relationship. Realauction argues that Grant Street failed to prove this count as well. Grant Street is correct that this court does not sit as a “second trier of fact” and that an appellate court may override a jury verdict only if there is “no competent substantial evidence” to support that verdict. Ruskin v. Ryan, 859 So.2d 1218, 1219-20 (Fla. 4th DCA 2003) (quoting MMH Venture v. Masterpiece Prods., Inc., 559 So.2d 314, 316 (Fla. 3d DCA 1990)). Further, the evidence must be evaluated “in the light most favorable to the plaintiff and every reasonable inference deduced from the evidence must be indulged in [the] plaintiffs favor.” Am. Motors Corp. v. Ellis, 403 So.2d 459, 467 (Fla. 5th DCA 1981). In reviewing this case with this standard firmly in mind, we first discuss the 2005 tortious interference claim because the facts are inextricably intertwined with our conclusion on the 2006 claim.
To prove tortious interference, Grant Street had to prove the following elements: 1) the existence of a business relationship not necessarily evidenced by an enforceable contract under which the plaintiff has rights; 2) the defendant’s knowledge of the relationship; 3) an intentional and unjustified interference with the relationship by the defendant; and 4) damage to the plaintiff as a result of the interference. Salit v. Ruden, McClosky, Smith, Schuster & Russell, P.A., 742 So.2d 381, 385 (Fla. 4th DCA 1999). A business relationship is evidenced by “an actual and identifiable understanding or agreement which in all probability would have been completed if the defendant had not interfered.” Ethan Allen, Inc. v. Georgetown Manor, Inc., 647 So.2d 812, 815 (Fla.1994). Therefore, Grant Street was required to put on evidence that, in all probability, the County would have entered into the contract for services but for Realauction’s email. See St. Johns River Water Mgmt. Dist. v. Femberg Geological Servs., Inc., 784 So.2d 500, 505 (Fla. 5th DCA 2001); see also ISS Cleaning Seros. Group, Inc. v. Cosby, 745 So.2d 460, 462 (Fla. 4th DCA 1999) (reversing denial of directed verdict where there was not competent substantial evidence' of an agreement “which in all probability would have been completed had the alleged interference not occurred.”).
*1059 Grant Street failed to make this requisite prima facie showing. The testimony of the two County staff members who made the decision to terminate negotiations in April 2005 directly contradicts Grant Street’s claim. Judith Fink and her supervisor, Broward County Chief Financial Officer Phil Allen, testified that Rea-lauction’s email had nothing to do with the decision to terminate negotiations.
In addition, there is significant testimonial and documentary evidence which supports the trial court’s finding that no deal had yet been struck. Even before the April 20, 2005 email was sent, there were numerous unresolved impediments to the agreement. Some of the County’s - concerns included: entering into a sole source contract when other vendors had entered the marketplace, the cost effectiveness of an online auction compared to manual auctions, a proposed security audit, and receiving timely approval from the Broward County Board of Commissioners. Importantly, the County was concerned regarding liquidated damages. The County had requested that Grant Street indemnify it in the event of a lawsuit challenging the validity or legality of the online tax certificate auction process and post a litigation bond. Nothing in the record indicates that these issues would have been resolved at the April 22, 2005 meeting.
Despite strong evidence that the County would not have entered into the contract even if the email did not exist, Grant Street argues that its claim was supported by an inference arising from the evidence. While a court may consider inferences arising from facts, these inferences must be reasonable. See Miller v. State, 75 So.2d 312, 315 (Fla.1954). It is uncontroverted that Grant Street presented no documents or witness testimony other than the speculative testimony of its own president, Myles Harrington, which indicated the email was the reason for the termination of the contract. Speculative testimony is not competent substantial evidence. See Balboni v. LaRocque, 991 So.2d 993, 996 (Fla. 4th DCA 2008). The requisite showing of causation cannot be supported by mere supposition that defendant’s interference caused the cessation of the business relationship. See Rockledge Mall Assocs., Ltd. v. Custom Fences of S. Brevard, Inc., 779 So.2d 554, 558 (Fla. 5th DCA 2001) (reversing denial of directed verdict on tortious interference claim where only evidence of causation was plaintiffs “circumstantial evidence”). In light of the unrebutted direct testimony offered by Realauction and the mere speculative testimony offered by Grant Street, it was unreasonable for the court or jury to “infer” that the negotiations were terminated because of the Realauction email. See Kam Seafood Co. v. State, 496 So.2d 219 (Fla. 1st DCA 1986) (reversing trial judge’s ruling which was based on an inference that was unreasonable because it contradicted clear direct evidence). Based on these facts, we find the trial court properly entered a directed verdict for the 2005 tortious interference counts.
It is clear from the facts that this case involves two separate and distinct business relationships. Judith Fink, in an unequivocal April 22, 2005 email, terminated negotiations with Grant Street for services to be provided in 2005. In a separate email, CFO Allen indicated that while the negotiations between Grant Street and the County for 2005 had broken off, Grant Street would “have the same opportunity as other firms to submit a formal proposal as part of the bidding process” for future services.
Grant Street received this opportunity six months later. In November of 2005, the County issued an RFP for services to be provided in 2006. As a result of Grant Street’s top ranking under the bidding *1060 process, negotiations began anew and took place between November 2005 and February 2006. Eventually, a proposed contract was sent to the Board of County Commissioners for review and possible award in February. Grant Street ultimately was not awarded the contract.
Grant Street’s amended complaint alleges that Realauction and McClendon continued to repeat the “false and defamatory statements contained in their April 20, 2005 email.” They allege that this caused the termination of their business relationship with the County in 2006. However, there is no record evidence that Realauction wrote, said or repeated anything derogatory concerning Grant Street after the April 20, 2005 email was sent. Grant Street’s CEO Myles Harrington conceded this at trial, leaving only the email as the source of alleged interference.
When the email was sent in April of 2005, Grant Street could have had only a speculative hope that it would receive business from the County in the future. Speculative hope of future business is not sufficient to sustain the tort of interference with a business relationship. Douglass Fertilizers & Chem., Inc. v. McClung Landscaping, Inc., 459 So.2d 335, 337 (Fla. 5th DCA 1984) (holding that plaintiffs claim for loss of future business was too speculative to support the verdict).
Under these circumstances, we need not analyze whether a business relationship existed in February 2006 nor reach the issue of causation. The tortious interference claim fails as a matter of law. Even if the 2006 business relationship was proven, it did not exist when Realauction’s email was sent. The law is clear that to sustain a tortious interference claim, “[t]here must be a relationship in existence at the time of any alleged interference.” Bernstein v. True, 636 So.2d 1364, 1366 (Fla. 4th DCA 1994). Grant Street did not make this requisite prima facie showing. Because the relationship did not exist when the alleged interference occurred, the tortious interference claim fails.
We reverse the final judgment and remand with directions to enter final judgment in favor of Realauction. Based on this ruling, we reverse the cost judgment as well.
DAMOORGIAN and GERBER, JJ., concur.