SCHWARTZ, Senior Judge.
Rosalia Gonzalez sued Mount Sinai hospital for the wrongful death of her husband, Antonio Gonzalez. She claimed that, as she and her husband descended steps at Mount Sinai’s main bus stop, he fell and broke his hip, as a result of which he passed away a few weeks later. The jury returned a large verdict for the plaintiff, upon which judgment was entered after it was reduced by an uncontested remittitur. Because the plaintiff did not present competent evidence that her husband even fell on or down the steps — let alone that he did so because of their defective condition— rather than on the sidewalk adjacent to the bus stop, and thus failed to show that Mount Sinai’s alleged negligence was a legal cause of the accident, we reverse.
I
The sum total of Mrs. Gonzalez’s claim was that her husband was injured as a result of the hazardous condition of the hospital steps.[1] The record, however, confirms the absence of probative evidence upon which the jury could have concluded that the accident took place on the steps and that, therefore, their condition was even related to the accident. Indeed, it shows just the opposite:
The only probative, direct testimony on the issue was that of driver Fausto Manzo, who was sitting in his bus, awaiting passengers. He testified that he saw the fall itself and that the Gonzalezes had already reached the sidewalk when it occurred. He stated:
Q. What were you doing when this incident happened?
A. Well, when the gentleman fell, I had pulled in at Mount Sinai and the passengers got off. The gentleman, I remem *1201 ber, he was coming down. Afterwards, he was on the sidewalk and he rushed to the bus and he fell [e.s.]. He was with his wife. I believe it was his wife.
[[Image here]]
Q. You said they came down. What did they come down?
A. Well they came down the steps. There were a couple of steps there.
Q. And they had competed [sic.] coming down the steps when you saw this gentleman fall down?
A. Yes, sir.
Q. Was he walking on the sidewalk?
A. Yes. When he fell down, he was on the sidewalk, sir [e.s.].
He confirmed this account in a call to his dispatcher immediately after the accident had occurred.[2],[3]
II
On the “other side” of the issue, we find is only empty evidentiary space.
1. Her primary rebanee is on her own testimony, which although it contains statements that support her claim, was on analysis, no more than speculative and eonclusory and thus valueless. On direct examination, Mrs. Gonzalez admitted that she did not see her husband fall, but rather, after the fact, deduced what had occurred:
I was on the other one [step] already. But upon coming down I don’t know what happened to him. I was looking at him. What I’m deducing from this is that he instead of stepping on the other step, went towards the sidewalk.
On cross examination, Mrs. Gonzalez stated that she was only speculating as to what had occurred:
Q. I was asking you before the break where your husband’s feet were when he fell. You do not know where his feet were at the time that he tripped, correct?
A. I just saw that he was looking to balance himself or something. So then I quickly see him on the floor, so I was looking at him or his feet.
Q. Mrs. Gonzalez, even as we sit here today, you don’t know why your husband fell, do you?
A. Well, I didn’t see it, but I would imagine — I imagine that he — on that step, he didn’t see it or he stepped on it, on the very edge of it and slipped [e.s.].
*1202 Indeed, Mrs. Gonzalez confirmed that she returned to the scene of the accident the next day, just to try and figure out how the accident happened, stating “I went back there to see and to — how he fell and how it would have been.” Opposing counsel clarified:
Q. You just don’t know. These are things that you’re guessing at?
A. [Mrs. Gonzalez] Yes, I do suppose that because I was looking toward what I was doing. I wasn’t looking at him.
This testimony falls directly under the holding in Gooding v. University Hospital Building, Inc., 445 So.2d 1015, 1018 (Fla.1984) (quoting Prosser, Law of Torts § 41) (footnotes omitted), that “[a] mere possibility of ... causation is not enough; and when the matter remains one of pure speculation or conjecture, or the probabilities are at best evenly balanced, it becomes the duty of the court to direct a verdict for the defendant.” See Palmas Y Bambu, S.A. v. E.I. Dupont De Nemours & Co., 881 So.2d 565, 569 (Fla. 3d DCA 2004) (affirming directed verdict in part “because the nurseries failed to establish causation”).
2. The plaintiffs reliance on her engineering expert is likewise misplaced. His testimony was arguably sufficient as to whether the steps were properly constructed, see, e.g., Millar v. Tropical Gables Corp., 99 So.2d 589, 590 (Fla. 3d DCA 1958) (concluding expert’s “testimony would be helpful in order to determine whether the premises were constructed and maintained in accordance with reasonably safe construction and engineering standards”), and, although with less certainty, whether those defects could be deemed the legal cause of Mr. Gonzalez’s otherwise unexplained falling upon and down the steps. See Wong v. Crown Equip. Corp., 676 So.2d 981, 983 (Fla. 3d DCA 1996) (Schwartz, J. dissenting) (“In my opinion, it is clear that these undisputed facts give rise to an eminently reasonable inference that he fell from the equipment at least partly because of the absence of those safety devices.”); Majeske v. Palm Beach Kennel Club, 117 So.2d 531, 533 (Fla. 2d DCA 1959) (“[T]he question of whether [defendant’s] negligence was the proximate cause of the plaintiffs injury could be proven as conclusively by circumstantial as by parol evidence.”); but see Wong, 676 So.2d at 983 (“[N]o evidence exists to sustain plaintiffs burden as to how the accident happened. In the absence of this evidence, plaintiffs cause of action must fail.”). His testimony on the key issue of causation, however, was decidedly not. He stated as follows:
My opinion is there’s a high engineering probability that this was the cause of such a misstep. As long as that condition existed, it’s a dangerous condition and the likely cause of missteps.
It is obvious that this testimony was not only well beyond the witness’s supposed expertise but totally “conclusory in nature and ... unsupported by any discernible, factually-based chain of underlying reasoning.” Div. of Admin, v. Samter, 393 So.2d 1142, 1145 (Fla. 3d DCA 1981) (concluding “no weight may be accorded” such testimony). As Arkin Construction Co. v. Simpkins, 99 So.2d 557, 561 (Fla.1957), explains:
It is elementary that the conclusion or opinion of an expert witness based on facts or inferences not supported by the evidence in a cause has no evidential value. It is equally well settled that the basis for a conclusion cannot be deduced or inferred from the conclusion itself. The opinion of the expert cannot constitute proof of the existence of the facts necessary to the support of the opinion.
See Trumbull Ins. Co. v. Wolentarski, 2 So.3d 1050, 1056 (Fla. 3d DCA 2009) (“[T]he ‘expert’ testimony in this case *1203 find[ing] no factual support in the record and [was], therefore, of no evidentiary value whatsoever.”); see, e.g., Cedars Med. Ctr., Inc. v. Ravelo, 738 So.2d 362, 369 (Fla. 3d DCA 1999) (“[W]ithout a predicate for the opinion which Ravelo sought to elicit, the trial court correctly ruled that the expert’s opinion could not be put before the jury.”); Rodriguez v. Pino, 634 So.2d 681, 686 (Fla. 3d DCA 1994) (“It is clear, then, that [doctors’] opinions regarding Mrs. Pino’s competency amount to mere speculation. Expert testimony of this kind may not be given weight.”).
3. Finally, the appellee points to the obviously hearsay (but unobjected to) contents of a treating physician’s report in the hospital records apparently referring to the now deceased’s account of the accident:
This is an 86-year-old male who was walking off the bus with his wife and then, after the third step, he caught the edge of his foot and was unable to get his balance, falling with severe pain and discomfort in his left hip. [e.s.]
Even putting aside the fact that no finding may be based even on unchallenged hearsay alone, see Rothe v. State, 76 So.3d 1010, 1011 (Fla. 1st DCA 2011) (“[A] court may not rely only on hearsay evidence to find a violation of community control.”); Perry v. Bradshaw, 43 So.3d 180,181 (Fla. 4th DCA 2010) (“[T]he trial court erred in relying on nothing but inadmissible hearsay.”); Velilla v. Williams Island, 705 So.2d 1044, 1045 (Fla. 3d DCA 1998) (rejecting finding “based upon pure hearsay which is directly contrary to the only direct testimony on the point”), this evidence is also markedly deficient. This is because while the report says that the accident occurred as he was walking off the bus, the account was not only contrary to the established historical facts, but to the showing the plaintiff herself attempted to and was required to make: that the accident occurred as Mr. Gonzalez was going and fell down the steps as a result of their defective condition.
IV
All of this was confirmed by a partial summary judgment granted in the hospital’s favor some eight months before trial, in which the trial court correctly concluded:
The Court makes the following findings of fact: 1) Decedent was 86 years of age at the time of fall; 2) Decedent had a history of 2 prior falls; 3) Decedent had prior complaints of dizziness; 4) in the ER the record reflected that the nurse noted that the Decedent fell within the last 6 months; 5) at time of incident Decedent and his wife were on their way to the bus after the wife’s appointment; 6) Mrs. Gonzalez was not looking at her husband at the time he fell, as she was not looking towards him [e.s.]; 7) Mrs. Gonzalez does not know why the Decedent fell; 8) Decedent did not tell Mrs. Gonzalez how he fell, he didn’t say anything; 9) Decedent fell right in front of the bus; 10) Mr. Manzo saw Decedent approach the bus before he fell; 11) Mr. Manzo does not recall the Decedent on the steps, he recalled that he fell a little after the steps; 12) Decedent fell between the steps and the bus.
Notwithstanding these findings, however, the court gave Mrs. Gonzalez the opportunity to prove her claim to a jury, concluding “[t]he only issue for the jury is whether the steps or some other factor caused the Decedent’s fall.” She did not carry that burden. Instead, Mrs. Gonzalez failed to provide evidence from which a jury could reasonably conclude that, more likely than not, the hospital steps were a substantial factor in bringing about her husband’s fall. As Gooding, 445 So.2d at 1018, states:
*1204 In negligence actions Florida courts follow the more likely than not standard of causation and require proof that the negligence probably caused the plaintiffs injury. See Tampa Electric Co. v. Jones, 138 Fla. 746, 190 So. 26 (1939); Greene v. Flewelling, 366 So.2d 777 (Fla. 2d DCA 1978), cert, denied, 374 So.2d 99 (Fla.1979); Bryant v. Jax Liquors, 352 So.2d 542 (Fla. 1st DCA 1977), cert, denied, 365 So.2d 710 (Fla.1978). Pros-ser explored this standard of proof as follows:
On the issue of the fact of causation, as on other issues essential to his cause of action for negligence, the plaintiff, in general, has the burden of proof. He must introduce evidence which affords a reasonable basis for the conclusion that it is more likely than not that the conduct of the defendant was a substantial factor in bringing about the result. Prosser, Law of Torts § 41 (4th Ed.1971) (footnotes omitted).
See Claire’s Boutiques v. Locastro, 85 So.3d 1192, 1195 (Fla. 4th DCA 2012); accord Fetterman and Assoc., P.A. v. Friedrich, 69 So.3d 965, 968 (Fla. 4th DCA 2011); Murphy v. Sarasota Ostrich Farm/ Ranch, Inc., 875 So.2d 767, 769 (Fla. 2d DCA 2004); Proto v. Graham, 788 So.2d 393, 396 (Fla. 5th DCA 2001); see also Wroy v. N. Miami Med. Ctr., Ltd., 937 So.2d 1116,1117 (Fla. 3d DCA 2006).
The judgment under review is therefore reversed for entry of judgment in the hospital’s favor.[4]

. Her complaint alleged:
4. That on or about February 13, 2009, ANTONIO GONZALEZ, deceased, while on the premises owned, operated and in control of the Defendant, MOUNT SINAI MEDICAL CENTER, and located at 4300 Alton Road, Miami Beach, Florida 33140, was caused to trip and fall, after not being able to negotiate the second of three steps. This was caused as a result of a missing yellow stripe, which should have been at hand to indicate the presence of the second step. The location of the steps in question is located at the bus stop in said premises of the Defendant, MOUNT SINAI MEDICAL CENTER.
5. That the Defendant, MOUNT SINAI MEDICAL CENTER, had knowledge that in the exercise of reasonable care should have known that said condition as stated in paragraph 4 above, in said premises of Defendant, constituted a hazard and presented an unreasonable risk of injury and harm to persons who was legally on the premises.
6. That by maintaining said premises in those conditions constituted negligence on the part of the Defendant, which proximately resulted in his serious personal injury and subsequent death. Defendant, MOUNT SINAI MEDICAL CENTER, knew or should have noticed at the time of the accident of the hazardous condition, had the duty of correcting this defect, and failed to do so.
7. As a result of the aforementioned negligence of the Defendant, ANTONIO GONZALEZ, deceased, was injured, said injuries were permanent and subsequently led to his death and the loss of future enjoyment of his life.

. We disagree with appellee’s argument that this testimony was impeached in any material way by the cross examination of Mr. Manzo or by a video which showed him pointing to the place on the steps where Mr. Gonzalez's head came to rest (as opposed to where the fall actually occurred). In any event, even impeached unfavorable testimony does not thereby become favorable evidence. It could not result in the creation of an issue for the jury as to causation in the absence of any other such evidence.

. While we think it likely, we need not directly decide if Mr. Manzo's testimony brought the case within the rule that even otherwise sufficient circumstantial evidence is in sufficient to create an issue of fact in the face of unrebutted direct testimony. See e.g., Rea-lauction.com, LLC v. Grant Street Grp., Inc., 82 So.3d 1056, 1059 (Fla. 4th DCA 2011) ("In light of the unrebutted direct testimony offered by Realauction and the mere speculative testimony offered by Grant Street, it was unreasonable for the court or jury to ‘infer’ that the negotiations were terminated because of the Realauction email. See Kam Seafood Co. v. State, 496 So.2d 219 (Fla. 1st DCA 1986) (reversing trial judge’s ruling which was based on an inference that was unreasonable because it contradicted clear direct evidence).”); Alan & Alan, Inc. v. Gulfstream Car Wash, Inc., 385 So.2d 121, 123 (Fla. 3d DCA 1980) ("It is a well-settled principle that a fact cannot be established by circumstantial evidence which is perfectly consistent with direct, uncontradicted, reasonable and unim-peached testimony that the fact does not exist.”).

. In the interests of adjudicating the substantial issues presented to us, we also find that, for two reasons, a new trial would be required even if a directed verdict is not.
First, the trial court erroneously admitted the unsupported expert testimony to which we have already referred. See Samter, 393 So.2d at 1145; Arkin Constr. Co., 99 So.2d at 561; Trumbull Ins. Co., 2 So.3d at 1056.
Second, the trial court erred in admitting evidence of a prior slip and fall at the scene which was not similar to the one in question here. That ruling was made as as a purported “sanction” for an alleged discovery violation by the defendant. We have severe doubts as to whether a harmful violation occurred at all, see Mercer v. Raine, 443 So.2d 944, 946 (Fla. 1983), but even if it did, there was no justification- — and we have found no authority to support — the admission of concededly otherwise inadmissible testimony, such as this to pollute the fair determination of issues before the jury. Thus, the punishment was way out of proportion to the alleged offense. See Gen. Motors Corp. v. Porritt, 891 So.2d 1056, 1059 (Fla. 2d DCA 2004) (" ‘[A] judge cannot simply 'use his discretion to decide that despite a plain lack of substantial similarity in conditions he will, nevertheless, admit the evidence.’ State v. Arroyo, 422 So.2d 50, 53 (Fla. 3d DCA 1982) (quoting Love v. State, 457 P.2d 622, 628 (Alaska 1969)).”); see also Ford Motor Co. v. Hall-Edwards, 971 So.2d 854, 860 (Fla. 3d DCA 2007) (holding that the trial court abused its discretion in admitting evidence of past accidents where a substantial similarity between the accident at issue and the past accidents had not been established).