DISTRICT COURT OF APPEAL OF THE STATE OF FLORIDA
FOURTH DISTRICT

**THE BANK OF NEW YORK MELLON,**
Appellant,

v.

**TIMOTHY M. KARDOK** a/k/a **TIMOTHY KARDOK,**
Appellee.

No. 4D22-730

[June 21, 2023]

Appeal from the Circuit Court for the Seventeenth Judicial Circuit, Broward County; Barry J. Stone, Senior Judge; L.T. Case No. CACE 19-004885(11).

Morgan L. Weinstein of Van Ness Law Firm, PLC, Fort Lauderdale, for appellant.

Jonathan Kline of Jonathan Kline, P.A., Weston, for appellee.

CONNER, J.

In this appeal, the specific question we address is whether circumstantial evidence was competent substantial evidence to negate by a preponderance of evidence the direct evidence that the Bank of New York Mellon ("the bank") had standing to bring the mortgage foreclosure suit below. We hold that, under the facts of this case, such circumstantial evidence was not competent substantial evidence to defeat the bank's standing. We therefore reverse the trial court's final judgment in favor of Timothy M. Kardok a/k/a Timothy Kardok ("the homeowner").

*Background*

In 2004, the homeowner executed and delivered a note and mortgage to America's Wholesale Lender ("the original lender"). Mortgage Electronic Registration Systems, Inc. ("MERS") was identified in the mortgage as the nominee for the original lender.

In 2019, the bank sued to foreclose on the mortgage and reestablish a lost note, alleging that it "[wa]s not in possession of the note, but [wa]s

entitled to enforce it." Attached to the complaint was a lost note affidavit executed by the then-current servicer for the mortgage and attorney-in-fact for the bank. In addition to alleging the execution and delivery of the note to the original lender, the affidavit alleged the note and mortgage had been assigned to the bank by the original lender. Further, the affidavit alleged the bank had searched for the original note but was unable to find it and had no knowledge as to when or how it was lost. Attached to the affidavit was a "true and correct" copy of the lost note. According to the copy, the note was unendorsed. Also attached to the affidavit was a copy of the assignment executed by MERS and recorded in 2012. The assignment assigned all interests under the mortgage "together with the note[]" to the bank.

The complaint's attachments also included a loan modification agreement executed and recorded in 2006. The modification agreement was between the homeowner and Countrywide Home Loans, Inc. ("Countrywide"), and stated it "amend[ed] and supplement[ed]" the mortgage and the note. The modification agreement further identified Countrywide as "Lender" and did not mention any other entities. It set forth a revised payment schedule for the homeowner but stated that the note and mortgage would otherwise remain unchanged.

The homeowner raised the affirmative defense of standing, and the case proceeded to a nonjury trial. The bank presented a case manager for the servicer as its sole witness. The bank also introduced into evidence multiple documents, the most pertinent to this appeal being copies of the note and mortgage, the assignment to the bank, a custodian log regarding the note, and the mortgage modification agreement.

The case manager testified as to the boarding and verification process that took place following the 2012 assignment of the note and mortgage to the bank, including the verification of original loan documents. He also testified the servicer conducted a due diligence check, looking for the original note and checking with prior loan servicers who may have had it.

Based on the custodian log, the case manager testified that during the boarding process, the servicer looked for but was unable to locate the "collateral file" for the loan. The case manager testified that the servicer determined through the independent verification process that the note had been lost before it was assigned to the bank by the original lender. Nothing in the independent verification process indicated the original lender had transferred the note to anyone other than the bank. The case manager also testified that the bank agreed to indemnify the homeowner if another party later found and enforced the original note.

2

The homeowner did not cross-examine the case manager, move for involuntary dismissal after the bank rested, or present any witnesses or evidence in defense.

During closing arguments, the homeowner argued, for the first time, that the bank had not presented any evidence as to the note's holder at the time the note was lost. Citing *Sabido v. Bank of New York Mellon*, 241 So. 3d 865 (Fla. 4th DCA 2017), the homeowner argued the assignment was meaningless because the assignment did not "state on whose behalf" MERS was transferring the note. Additionally, the homeowner argued the complaint likewise did not allege when the note was lost, and the bank never entered the lost note affidavit into evidence.

The homeowner argued the bank's evidence was particularly concerning because of the loan modification agreement, which was entered into by Countrywide and not the original lender. The homeowner therefore argued the bank had not shown an unbroken chain of transfers.

The bank countered that the 2012 assignment was valid as it transferred the note and mortgage from MERS, as nominee for the original lender, to the bank. Because the note was unendorsed, even if Countrywide physically possessed it, Countrywide could not enforce it. The bank argued that the homeowner's arguments were irrelevant because Countrywide was just another servicer, not another lender or note holder. The bank contended only two potential note owners or holders were involved: the original lender and the bank. Thus, the bank argued it had shown standing in two different ways: through the assignment and through reestablishment of the lost note. The bank additionally argued that *Sabido* made it clear that reestablishment of a lost note did not require the lost note affidavit to be admitted into evidence. Instead, the required information could be supplied by testimony.

After closing arguments, the trial court verbally ruled that the mortgage modification agreement created "too big a gap here for me to say that I can find by a preponderance of the evidence before me that the note was a result of the transfer in accordance with the language of the statute 673.3091." The trial court subsequently entered a final judgment in the homeowner's favor, stating that the bank "failed to prove standing by failing to prove compliance with Florida Statute § 673.3091[(1)](a)." The bank gave notice of this appeal.

3

*Appellate Analysis*

The bank argues it proved its standing because it reestablished the lost note and, regardless of the lost note, the assignment from MERS established standing. The homeowner counters that the trial court correctly found the bank did not reestablish the lost note because the loan modification listing Countrywide as the lender broke the chain of assignments, and the assignment to the bank from MERS was invalid because it did not list an assignor.

A party's standing is a legal issue, reviewed de novo. *Lewis v. US Bank Nat'l Ass'n*, 298 So. 3d 72, 75 (Fla. 4th DCA 2020). "A trial court's determination of whether a party has reestablished a lost note is reviewed for sufficiency of the evidence" and "[a]n appellate court may reverse on finding a failure of proof." *Id.* (quoting *Home Outlet, LLC v. U.S. Bank Nat'l Ass'n*, 194 So. 3d 1075, 1077 (Fla. 5th DCA 2016)).

"A plaintiff seeking to foreclose a mortgage must tender the original promissory note to the trial court or seek to reestablish the lost note pursuant to section 673.3091, Florida Statutes." *Am. Residential Equities LLC v. Saint Catherine Holdings Corp.*, 306 So. 3d 1057, 1059 (Fla. 3d DCA 2020) (quoting *Boumarate v. HSBC Bank USA, N.A.*, 172 So. 3d 535, 536 (Fla. 5th DCA 2015)); *see also Sabido*, 241 So. 3d at 866 (noting same).

Section 673.3091, Florida Statutes (2019), governing reestablishment of lost notes, provides:

> A person not in possession of an instrument is entitled to enforce the instrument if:
>
> (a) The person seeking to enforce the instrument was entitled to enforce the instrument when loss of possession occurred, or has directly or *indirectly acquired ownership of the instrument from a person who was entitled to enforce the instrument when loss of possession occurred*;
>
> (b) The loss of possession was not the result of a transfer by the person or a lawful seizure; and
>
> (c) The person cannot reasonably obtain possession of the instrument because the instrument was destroyed, its whereabouts cannot be determined, or it is in the wrongful possession of an unknown person or a person that cannot be found or is not amenable to service of process.

§ 673.3091(1), Fla. Stat. (2019) (emphasis added).

"A party seeking to reestablish a lost note may meet the statutory requirements 'either through a lost note affidavit or by testimony from a person with knowledge.'" *Lewis*, 298 So. 3d at 76 (quoting *Sabido*, 241 So. 3d at 866). "The lost note affidavit or testimony need not 'establish exactly when, how, and by whom the note was lost.'" *Id.* (quoting *Sabido*, 241 So. 3d at 867). "It must, however, prove the party seeking reestablishment of the note acquired ownership from a party with the right to enforce the note when lost." *Id.* "At a minimum then, the evidence must establish *who had the right to enforce the note when it was lost and how the party seeking reestablishment obtained ownership.*" *Id.* (emphasis added).

Except for the circumstantial evidence discussed later in this opinion, if the assignment in this case was valid, then the bank qualified as an entity that "directly or indirectly acquired ownership of the instrument from a person who was entitled to enforce the instrument when loss of possession occurred." § 673.3091(1)(a), Fla. Stat. (2019). This appeal therefore turns in part on the assignment's validity.

The homeowner argues that the assignment was invalid for several reasons,[1] including that the assignment lacked an assignor and was therefore "meaningless" under sections 701.01 and 701.02(5), Florida Statutes (2016). However, this argument ignores that MERS is clearly the assignor, explicitly assigned both the note and the mortgage, and is designated as the original lender's nominee in the mortgage itself. Thus, the homeowner's cite to *Forty One Yellow, LLC v. Escalona*, 305 So. 3d 782 (Fla. 2d DCA 2020), is distinguishable because that case involved the transfer of interests not actually held by the assignor. *Id.* at 787.

Insofar as the homeowner's argument can be read as taking issue with the fact that MERS was identified in the assignment as the mortgage holder (rather than the mortgage *and* note holder), the homeowner's argument still lacks merit. The mortgage, again, makes clear that MERS had authority to assign the note. The assignment, furthermore, stated that it transferred the note *and* the mortgage. *Cf. Forty One Yellow*, 305 So. 3d at 787 (finding no standing based on assignment from MERS failing to mention the note). The homeowner has not identified, and we have not found, any cases in which such a transfer was held ineffective.

---

[1] Without further discussion, we determine the homeowner's other arguments challenging the assignment's validity are without merit.

We therefore conclude the homeowner's arguments that the assignment was "meaningless" have no merit. In fact, as discussed further below, the assignment was *direct evidence* that the note's ownership passed from the original lender to the bank. Thus, the next issue we must address is whether this direct evidence was undermined by circumstantial evidence concerning Countrywide.

Normally, the defendant has the burden of proof as to an affirmative defense. *See, e.g., Custer Med. Ctr. v. United Auto. Ins. Co.*, 62 So. 3d 1086, 1096 (Fla. 2010). However, as discussed by the Second District in *Winchel v. PennyMac Corp.*, 222 So. 3d 639 (Fla. 2d DCA 2017), "[a]s defenses go, standing has become something of a legal oddity. We treat it as an affirmative defense in that the defendant must put it in play by raising it in an appropriate pleading—ordinarily, the answer." *Id.* at 642; *see also Morroni v. Wilmington Sav. Fund Soc'y FSB*, 292 So. 3d 514, 516 n.1 (Fla. 2d DCA 2020) ("The defendant . . . bears the burden of raising standing as an issue to be tried in the case, typically by pleading it as an affirmative defense in the answer."). Yet, in the context of mortgage foreclosures, "once injected into a case . . . we say that [standing] must be proved at trial by the plaintiff. Once put at issue by a defendant, then, standing becomes a part of the prima facie case that a foreclosure plaintiff must prove in order to secure a judgment." *Winchel*, 222 So. 3d at 643 (citations omitted); *see also McLean v. JP Morgan Chase Bank Nat'l Ass'n*, 79 So. 3d 170, 173 (Fla. 4th DCA 2012) ("A crucial element in any mortgage foreclosure proceeding is that the party seeking foreclosure must demonstrate that it has standing to foreclose.").

The evidence in this case clearly established that the note was lost while the original lender was the owner. The copy of the note showed it was unendorsed. The bank's witness also testified, based on the diligent search for the note as part of the boarding process when the note and mortgage were assigned to the bank, that the bank did not locate any evidence of the note having been transferred to an entity other than the bank. Thus, the bank presented evidence demonstrating that the bank's lack of possession of the note was not because the note had been transferred to another person or entity by the original lender. Further, this evidence, plus the assignment of the note and mortgage from the original lender to the bank, amounted to a prima facie case that the bank had standing to bring the foreclosure suit. *See* § 673.3091(1), Fla. Stat. (2019). It was then incumbent on the homeowner to undermine this prima facie case. *See Elizon DB Transfer Agent, LLC v. Ivy Chase Apartments, Ltd.*, 297 So. 3d 641, 645 (Fla. 2d DCA 2020) (reversing foreclosure dismissal where allonge established standing and there was no evidence

6

disputing the allonge was executed prior to foreclosure suit); *Kronen v. Deutsche Bank Nat'l Tr. Co. as Tr. for WAMU Pass-Through Certificates, Series 2006-AR3*, 267 So. 3d 447, 448 (Fla. 4th DCA 2019) (affirming foreclosure where homeowner offered no evidence to rebut the *Ortiz* presumption proving standing [2]).

At the close of the bank's presentation of evidence, however, the homeowner chose to take a risk: he did not to move for involuntary dismissal or present any evidence in defense. In closing arguments, the homeowner stressed more than once that the note in this case was unendorsed. Although neither party explicitly argued whether the modification agreement identifying Countrywide as "Lender" was circumstantial evidence that the note had been transferred by the original lender to Countrywide, that was the substance of the homeowner's closing argument. The homeowner did not point to any other evidence in support of his contention that the note had been transferred to Countrywide, and did not address testimony from the bank's witness that all of the bank's documents pertaining to the collateral (i.e., the copies of the note and mortgage) came from prior servicers. This would include the modification agreement (which also had been attached to the complaint).

Ultimately, the trial court found that the 2012 MERS assignment was clear evidence of standing but found in the homeowner's favor based on the possibility that the 2006 modification agreement between Countrywide and the homeowner, standing alone, created a "gap" in the evidence. The trial court's conclusion primarily turned on one thing: the identification of Countrywide as "Lender" in the modification agreement.

There was no evidence the note was endorsed (and in fact the homeowner stressed it was not). There was no evidence the note had been assigned to Countrywide. The homeowner did not cross-examine the bank's witness or present any evidence in defense, but wholly traveled on the identification of Countrywide as "Lender" in the modification agreement to argue that it was possible the note had been transferred to Countrywide. Moreover, the modification agreement did not contain any language (other than identifying Countrywide as "Lender") indicating that Countrywide was the owner or holder of the note. Instead, the modification agreement contained language that "[e]xcept as otherwise specifically provided in this Agreement, the Note and Security Instrument will remain unchanged," indicating the original lender remained as the holder and owner of the note.

---

[2] *Ortiz v. PNC Bank, Nat'l Ass'n*, 188 So. 3d 923, 925 (Fla. 4th DCA 2016).

7

Additionally, the documents connected with the loan show some very close connection between Countrywide and the original lender, which circumstantially suggests that the two were in fact one. The mortgage, interest only rate adjustment rider, and planned unit development rider, all of which were signed by the homeowner at the loan closing, contain a notation at the top that each was prepared by an employee of the original lender and the document was to be returned after recording to the document processing department of Countrywide. The mortgage to the original lender states it was prepared by "Dwayne Crawford – America's Wholesale Lender." But the interest only adjustable-rate rider states that it was prepared by "Dwayne Crawford – Countrywide Home Loans, Inc." The rider also states that it is an amendment to the note given by the homeowner to "Countrywide Home Loans, Inc. (the Lender)." Thus, the loan documents signed at closing provided circumstantial evidence that the original lender and Countrywide were closely connected and may have been the same entity.

The problem with the homeowner's circumstantial evidence argument is that "circumstantial evidence in a civil action will not support a jury inference if the evidence is purely speculative and, therefore, inadequate to produce an inference that outweighs all contrary or opposing inferences." *Food Fair Stores, Inc. v. Trusell*, 131 So. 2d 730, 733 (Fla. 1961); *see also R.J. Reynolds Tobacco Co. v. Nelson*, 353 So. 3d 87, 93 (Fla. 1st DCA 2022) ("[C]ircumstantial evidence cannot merely raise an unfounded suspicion or legally sufficient speculation that allows an intentional-tort claim to be submitted to a jury." (quoting *R.J. Reynolds Tobacco Co. v. Whitmire*, 260 So. 3d 536, 540 (Fla. 1st DCA 2018)))); *Winn Dixie Stores, Inc. v. White*, 675 So. 2d 702, 703 (Fla. 4th DCA 1996) (citing *Trusell*, 131 So. 2d at 733). Stated differently, "[i]t is a well-settled principle that a fact cannot be established by circumstantial evidence which is perfectly consistent with direct, uncontradicted, reasonable and unimpeached testimony that the fact does not exist." *Mount Sinai Med. Ctr. of Greater Miami, Inc. v. Gonzalez*, 98 So. 3d 1198, 1201 n.3 (Fla. 3d DCA 2012) (quoting *Alan & Alan, Inc. v. Gulfstream Car Wash, Inc.*, 385 So. 2d 121, 123 (Fla. 3d DCA 1980)).

Here, the bank not only made a prima facie case of standing based on direct evidence, but the only evidence which the homeowner cited to the contrary was circumstantial evidence that could just as well have been consistent with the bank's case. The mortgage designates MERS as nominee for the original lender and its "successors and assigns." Nothing in the modification agreement changes that. Indeed, the modification agreement only altered the homeowner's payment schedule and left all

other terms of the mortgage in place. Nothing in the assignment indicates it was invalid.

Accordingly, we hold that the bank satisfied its burden to prove its standing. We further hold that, on the facts of this case (i.e., where the note was unendorsed and there was direct evidence that the original lender transferred ownership of the note by a recorded written assignment), circumstantial evidence supporting an inference about the status of a third entity was not competent substantial evidence to rebut by a preponderance of evidence that the bank lacked standing to foreclose the mortgage.

*Conclusion*

Having determined that no competent substantial evidence rebutted the bank's direct evidence that the note and mortgage had been transferred and assigned by the original lender to the bank, we reverse the trial court's final judgment that the bank failed to prove standing, and we remand the case for further proceedings.

*Reversed and remanded for further proceedings.*

WARNER and DAMOORGIAN, JJ., concur.

\* \* \*

**Not final until disposition of timely filed motion for rehearing.**

9