[DO NOT PUBLISH]

# In the
# United States Court of Appeals
## For the Eleventh Circuit

_____

No. 24-10730

Non-Argument Calendar

_____

CHRISTOPHER SHIVER,

                                                          Plaintiff-Appellant,

*versus*

TAURUS INTERNATIONAL MANUFACTURING INC.,
TAURUS HOLDINGS INC.,

                                                          Defendants-Appellees.

_____

Appeal from the United States District Court
for the Northern District of Florida
D.C. Docket No. 5:22-cv-00125-AW-MJF

_____

Before ROSENBAUM, JILL PRYOR, and BRANCH, Circuit Judges.

PER CURIAM:

Christopher Shiver sought recovery in the district court for serious injuries he suffered when his Taurus PT 740 handgun unintentionally discharged after being dropped.  He brought claims for products liability, failure to warn, and negligence, among others.  The district court granted summary judgment against Shiver after excluding the testimony of his expert witness as not reliable or helpful.  In the alternative, the court found that, even if the expert testimony was considered, the evidence failed to create a genuine issue of material fact on the issue of causation.  Shiver appeals both the exclusion of testimony from his expert and the grant of summary judgment.  After careful review, we agree with the court that, even considering the expert testimony, the record lacks sufficient evidence to show that the specific defect alleged caused Shiver's injuries.  Accordingly, we affirm.

**I.**

In January 2021, Shiver was seriously injured when his Taurus PT 740 handgun fired after being dropped.  Shiver was attempting to retrieve the gun from the center console of his SUV when he lost control and dropped it.  The gun fell and hit the ground or part of the SUV, causing a bullet to discharge that passed through Shiver's jaw and face.  The manual safety was on when the gun fell, according to Shiver.

Shiver bought the PT 740 in 2016.  In 2018, Taurus replaced the "trigger bar" in the gun after Shiver experienced issues firing it. Before returning the weapon, Taurus fired it and verified that all features, including the manual safety, were working.  Shiver notified Taurus that the new trigger pull felt different, but a representative told him that the gun had been thoroughly inspected and was safe.  He had no further problems until the incident in 2021.

Shiver sued Taurus[1] in June 2022, alleging claims under a variety of theories, including negligence, strict-liability design and manufacturing defects, strict-liability failure to warn, negligent misrepresentation, and breach of express and implied warranties. The warranty claims were dropped in the operative second amended complaint.

A. *Expert Report and Testimony from William Munsell*

To help prove his case, Shiver retained William Munsell, an expert mechanical engineer specializing in design analysis, who conducted a "drop test" with the same model of PT 740.  Based on the results of the test, Munsell opined that the design of the PT 740 was defective in that it "allows a primer strike without a purposeful trigger pull when dropped."  According to Munsell, the defect was "consistent with a drop-fire scenario, as Mr. Shiver describes."

---

[1] The defendants are Taurus International Manufacturing Inc. and Taurus Holdings Inc.  The district court granted summary judgment to Taurus Holdings on the ground that it did not design or sell the pistol, and Shiver does not contest that ruling.  Thus, this appeal concerns only the first entity, Taurus International Manufacturing, which we refer to simply as "Taurus."

Munsell also opined that the instructions for the gun failed to warn of "the potential consequences of allowing your finger to rest on the trigger when applying the manual safety."

Munsell's report explained that the PT 740 was a "striker-fired" pistol, meaning the gun fires when the firing pin or "striker" impacts the "primer" at the base of the ammunition cartridge, igniting the main propellant. Three safety features, according to the report, prevented the striker from engaging unless the trigger was purposely pulled: (a) a "striker safety" incorporated into the slide; (b) a "blade safety" incorporated into the trigger, and (c) an external "manual safety" operated by the user.

But according to Munsell, a user could easily and inadvertently disable these safety features by activating the manual safety before the trigger had fully returned after firing a round. Specifically, the report stated, "if the manual safety is activated while the trigger is still in the range between 67% and 99% of its total travel, the trigger bar will be trapped," which effectively disables the three drop-safety features. We'll call this specific configuration the "trigger bar trap."

Based on these observations, Munsell devised a test in which he dropped an exemplar PT 740 from 1.4 meters on to concrete from different orientations after setting the trigger bar trap. The test, according to the report, was designed "to be similar to, but less severe than, the most strenuous tests used by manufacturers," and within the parameters used by various organizations, both civilian and military, to conduct drop-fire tests for pistols. He

conducted sixteen drops of the PT 740. Four of the drops resulted in primer strikes "without trigger manipulation and with the manual safety engaged," and the sixteenth and final drop cause the gun to discharge.

At his deposition, Munsell explained that the purpose of his testing was to show whether the functioning of the PT 740 was consistent with the facts as Shiver described them. In other words, the test was a "design evaluation to see if this gun in this condition can drop fire." He stopped after sixteen tests because the gun had discharged, "prov[ing] the issue." Munsell expressly stated that he did not intend to recreate the incident or to rule out other possibilities, nor did he "have causation opinions in this case." The "extent of [his] opinion" was that a defect in the PT 740 could have caused a drop fire as described by Shiver. Munsell expressed "no causation opinion" as to whether the defect caused Shiver's injuries.

We also note that Munsell identified a second defect—this one particular to Shiver's PT 740. According to Munsell, "in its post-accident condition, the trigger could be pulled through its total travel even with the manual safety engaged." But that defective condition "prevented the first defect from occurring"—that is, it prevented the manual safety from setting the trigger bar trap. Shiver does not rely on this second, individualized defect, and instead bases his claims on the defect allegedly common to PT 740s as a class.

B. *Motions to Exclude under* Daubert *and for Summary Judgment*

Taurus moved for summary judgment and to exclude Munsell's testimony under *Daubert v. Merrell Dow Pharmaceuticals, Inc.*, 509 U.S. 579 (1993), and Fed. R. Evid. 403. Taurus contended that Munsell's testimony or parts of it should be excluded for three reasons: (a) he was not a warnings expert; (b) his drop-fire test method was not reliable; and (c) his testimony would not be helpful to the jury. Taurus argued that it was entitled to summary judgment because Shiver had not presented expert testimony showing causation, and because, even if the court considered Munsell's testimony, Munsell did not provide any opinion on causation.

The district court held a joint summary judgment/*Daubert* hearing in December 2023. Shiver's counsel argued that causation was established by evidence that the circumstances were consistent with a drop-fire accident. The court responded that Shiver's case was not that the gun "must have been defective in some way" simply because it fired upon being dropped, "like a res ipsa loquitur kind of thing," but rather that it was "defective in this particular way" based on the trigger bar trap. Shiver's counsel agreed that the claims were based on that specific defect, but in his view, there was "no other way" for the gun to fire without the trigger being pulled. The judge replied that Shiver would get past summary judgment "[i]f the material question were did the gun fire when it hit the ground," but that he had to show "the reason it went off was because of" the trigger bar trap.

C. *Order Excluding Expert Testimony and Granting Summary Judgment*

24-10730                Opinion of the Court                7

The district court issued an order granting Taurus's *Daubert* motion and its motion for summary judgment. As to the motion to exclude under *Daubert*, the court found that Munsell's methodology was not reliable for two reasons: (a) he declined to use an established test for firearm drop safety and chose "to invent his own instead"; and (b) he "set out to drop the pistol as many times as it took to achieve the desired result." Nor would Munsell's testimony be helpful to the jury, the court stated, because there was no evidence that the test design reflected the circumstances in which Shiver's PT 740 drop fired. Finally, the court found that Munsell was not qualified to opine as to the adequacy of any warnings because he was not a human-factors expert, and that Munsell's opinions on warnings were the product of his "unreliable methodology."

Next, the district court found that summary judgment was warranted. Without Munsell's testimony, the court stated, Shiver had not established a defect in design or manufacture. And even if the court considered Munsell's testimony, it continued, summary judgment was appropriate for the "separate and independent reason" that Shiver had not shown a causal link between the alleged defect and his harm. In the court's view, the record lacked sufficient evidence for a jury to conclude that Shiver had set the trigger bar trap before dropping the PT 740. And the mere possibility "that the trigger mechanism of Shiver's gun might have been in Munsell's unique positioning and that this alleged defect might have caused the discharge" was not enough to create a genuine issue of material fact. Shiver now appeals.

## II.

We review the grant of summary judgment *de novo*. *Stalley v. Cumbie*, 124 F.4th 1273, 1282 (11th Cir. 2024). Summary judgment is not appropriate unless there is no genuine dispute as to any material fact and the moving party is entitled to judgment as a matter of law. *Id.*; Fed. R. Civ. P. 56(a). In making that determination, we construe the facts and draw all reasonable inferences in the light most favorable to the nonmoving party. *Stalley*, 124 F.4th at 1283. We may affirm the judgment on any basis in the record. *Id.*

We review for an abuse of discretion the district court's decision to exclude expert testimony under *Daubert*. *Harris v. Hixon*, 102 F.4th 1120, 1131 (11th Cir. 2024). "In applying that standard, we defer to the district court's ruling unless it is manifestly erroneous." *Id.* (quotation marks omitted).

## III.

Munsell contends that the district court manifestly erred in excluding Munsell's testimony. But even if we assume Munsell's testimony should have been admitted, we agree with the district court's independent and alternative determination that summary judgment was still appropriate for lack of proof of causation. Accordingly, we affirm the judgment on that ground without addressing whether the expert testimony was properly excluded.

Shiver's claims are governed by Florida law.[2]  "Florida has adopted a preponderance standard for causation in both negligence and strict liability actions; a mere possibility of causation is not enough." *Hessen v. Jaguar Cars, Inc.*, 915 F.2d 641, 647 (11th Cir. 1990); *see Murphy v. Sarasota Ostrich Farm/Ranch, Inc.*, 875 So. 2d 767, 769 (Fla. Dist. Ct. App. 2004) ("It has long been held that a possibility of causation is not sufficient to allow a claimant to recover.") (cleaned up).

In particular, the plaintiff must establish that the defendant's negligent conduct or the defect "proximately caused his injury." *Rink v. Cheminova, Inc.*, 400 F.3d 1286, 1295 (11th Cir. 2005).  Such a showing requires evidence "that it is more likely than not that the defendant's act was a substantial factor in bringing about the injury." *Christopher v. Cutter Labs.*, 53 F.3d 1184, 1191 (11th Cir. 1995) (quotation marks omitted); *see McCorvey v. Baxter Healthcare Corp.*, 298 F.3d 1253, 1257 (11th Cir. 2002) (requiring evidence of a "causal link between the alleged defect and [the plaintiff's] injuries").  Causation may be established by direct or circumstantial evidence. *Brown v. Glade & Grove Supply, Inc.*, 647 So. 2d 1033, 1036 (Fla. Dist. Ct. App. 1994).

Here, the district court did not err in finding that the evidence as to causation was too speculative to support a jury verdict. In the light most favorable to Shiver, the record shows the

---

[2] Because federal jurisdiction in this case rests on diversity jurisdiction, "we apply the law of the appropriate state, in this case Florida." *Jennings v. BIC Corp.*, 181 F.3d 1250, 1254 (11th Cir. 1999).

following: (a) Shiver's injuries were caused by his Taurus PT 740 firing; (b) the PT 740 fired in a drop-fire incident, after making contact with the ground or part of the SUV, and not due to an intentional trigger pull; (c) the manual safety was on at the time of the drop fire; and (d) the PT 740 was defective in that the manual safety could trap the trigger bar and disable the gun's drop-safety features; and (e) a user could easily and inadvertently set the trigger bar trap by engaging the manual safety too quickly after firing a round. In sum, Shiver offered evidence of a defect in the PT 740 that could have caused the drop fire he experienced.

Importantly, however, the expert who identified the defect offered no opinion as to whether the trigger bar trap defect caused Shiver's injuries.[3] Munsell testified that he did not intend to recreate the incident or to rule out other possibilities. Instead, he identified a specific configuration of the gun that could produce a drop fire under the circumstances described by Shiver. And he conceded he was unaware of any evidence in the record that suggested Shiver had set the trigger bar trap before the drop fire, even if there was "a possibility that [Shiver] did it without knowing." That was "why [Munsell] d[idn't] have a causation opinion." Munsell also noted that Shiver's PT 740, in its post-accident condition, was incapable of setting the trigger bar trap due to a deformity in the manual safety.

---

[3] Shiver does not contend that the mere fact of a drop fire is sufficient to establish that the gun was defective, so we do not address that possibility.

Thus, Shiver's expert stopped short of saying that the trigger bar trap defect was a substantial factor in bringing about the drop fire. And on this record, it would be speculation for the jury to make that same inferential leap. *Cf. Murphy*, 875 So. 2d at 769 (stating that the "jury could do nothing more than speculate" about causation where the plaintiff's expert identified a possible cause of the plaintiff's injury, but did not opine that it "more likely than not was a substantial factor" in bringing about the plaintiff's injury). In sum, we agree with the district court that the record, even considering Munsell's testimony, does not show more than the "mere possibility" that the alleged defect in the PT 740 model line caused Shiver's injuries. *See Hessen*, 915 F.2d at 647.

Because a "mere possibility of causation is not sufficient to allow a claimant to recover" under Florida law, *see Murphy*, 875 So. 2d at 769, we affirm the district court's grant of summary judgment on Shiver's negligence and strict-liability claims for product liability. And Shiver has abandoned any appeal of the grant of summary judgment on his claim for negligent misrepresentation by failing to brief that claim on appeal. *See Sapuppo v. Allstate Floridian Ins. Co.*, 739 F.3d 678, 680–08 (11th Cir. 2014) (issues not briefed on appeal are deemed abandoned).

In sum, we affirm the judgment of the district court.

**AFFIRMED.**